2005 UT 55

**SAVE OUR SCHOOLS et al., Plaintiffs and Appellants,**

v.

**The BOARD OF EDUCATION OF SALT LAKE CITY et al., Defendants and Appellees.**

**No. 20030994.**

Supreme Court of Utah.

Aug. 30, 2005.

Paul M. Durham, Mark O. Morris, Wade R. Budge, Salt Lake City, for plaintiffs.

John E.S. Robson, Joan M. Andrews, Salt Lake City, for defendants.

WILKINS, Associate Chief Justice:

¶ 1 The Plaintiffs appeal the trial court's ruling that the Salt Lake City School Board did not act arbitrarily or capriciously when it determined to close Lowell and Rosslyn Heights elementary schools. We affirm.

## BACKGROUND

¶ 2 On June 19, 2001, the Salt Lake City School Board ("the Board") voted to close Lowell and Rosslyn Heights elementary schools. This decision represented the culmination of more than four years of deliberation over how to resolve problems relating to school facilities usage, school boundaries, and school closure. Parents and others opposing the closure of the two schools filed separate lawsuits that were later consolidated into a single action. The matter was tried before the trial court from June 23 to July 7, 2003.

¶ 3 The sole issue before the trial court was whether the Board acted arbitrarily and capriciously in deciding to close the two schools because it allegedly failed to consider one of its closure policies, Policy FLA, in making its determination. The trial court held that the Board's closure decision should be upheld unless it was arbitrary and capricious. The court further held that such a finding could be made only if there was no reasonable basis for the Board's decision.

¶ 4 The Plaintiffs argued that the Board's decision was illegal because the Board ignored Policy FLA, a basic closure policy the Board enacted in 1973 to guide school closure decisions. Policy FLA was comprised of the following six factors:

(1) keeping neighborhood schools as close to students and community as economically possible;

(2) safety of students in travel to school and within the buildings they occupy;

(3) minimize the amount and distance of transportation required to place students in neighborhood schools;

(4) placement of students in efficient and educationally functional buildings;

(5) newer schools with more adequate facilities and less maintenance costs should be selected, if available in any given area, in preference to older schools; and

(6) replacement of old schools by building strategically placed new schools.

¶ 5 The Plaintiffs contended that because the Board members did not receive a copy of Policy FLA and some members were unaware of the specific policy itself, the Board should be precluded from asserting that it properly considered the policy in making the decision to close the two schools. The Board, on the other hand, maintained that all of the factors enumerated in Policy FLA were fully incorporated into new documents that guided the determination to close Rosslyn Heights and Lowell. Thus, the Board argues, regardless of whether all the Board members specifically knew about Policy FLA, its contents provided the basis for the decision and the Board therefore properly adhered to its closure policies.

¶ 6 At the conclusion of trial, the court made the factual finding that the Plaintiffs had "not proven that the Board failed to follow its closure policy in making its decision to close the two schools," and thus concluded that the Board had not acted arbitrarily or capriciously. It deferred to the Board's decision, holding that it could not do otherwise unless there was no reasonable basis for the Board's action. Accordingly, the trial court upheld the Board's decision and the Plaintiffs appealed. We have jurisdiction pursuant to Utah Code section 78–2–2(3)(j) (2002).

## ANALYSIS

¶ 7 This appeal requires us to analyze two issues. First, we must determine whether the trial court erred in making the factual finding that the Board considered Policy FLA in deciding to close Rosslyn Heights and Lowell elementary schools. We conclude that the trial court did not clearly err in making that finding. Second, we must determine whether the trial court granted the appropriate amount of deference to the Board's closure decision. We conclude that it did. We address each issue in turn.

## I. THE BOARD ACTED IN CONFORMITY WITH ITS POLICIES

■ ¶ 8 The sole basis for the Plaintiffs' argument that the Board acted arbitrarily or capriciously in deciding to close the two schools is that the Board acted without regard to Policy FLA. However, since the trial court found that the Board did consider Policy FLA, we would have to determine that the trial court's finding on that point was clearly erroneous before we could conclude that the Board acted arbitrarily and capriciously. *See* Utah R. Civ. P. 52(a) ("Findings of fact ... shall not be set aside unless clearly erroneous."); *438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 76, 99 P.3d 801 (evaluating a challenge to the trial court's factual findings under a clearly erroneous standard).

■ ¶ 9 The trial court's factual findings will not be considered clearly erroneous unless they are "not adequately supported by the record, resolving all disputes in the evidence in a light most favorable to the trial court's determination." *State v. Pena*, 869 P.2d 932, 936 (Utah 1994); *see also 438 Main St.*, 2004 UT 72 at ¶ 75, 99 P.3d 801 (holding that we will not "undertake an independent assessment of the evidence presented during the course of trial and reach our own separate findings," but will instead overturn the trial court's findings only if they "are against the clear weight of the evidence").

■ ¶ 10 It is the Plaintiffs' responsibility to marshal the evidence to demonstrate that the factual findings made by the trial court were erroneous. *See* Utah R.App. P.

24(a)(9). Specifically, our marshaling rule requires plaintiffs to "marshal all the evidence in favor of the facts as found by the trial court and then demonstrate that even viewing the evidence in a light most favorable to the court below, the evidence is insufficient to support the findings of fact." *Chen v. Stewart*, 2004 UT 82, ¶ 76, 100 P.3d 1177 (internal quotation omitted). We find that the Plaintiffs have failed to present sufficient evidence to overturn the factual finding made below. Because we find that the Plaintiffs failed to meet their burden, we accept the trial court's factual determination that the Board did consider Policy FLA in reaching its decision to close the two elementary schools. We repeat the facts in the record to explain our conclusion.

¶ 11 The trial court found that the Board members knew about the existence of Policy FLA, though "with some degree of difference regarding the [policy's] binding effect," and agreed that no policy should be ignored. It also found that the members conceded that "they did not review [the] FLA [policy] at the time the closure decision was made, and that no discussion involved any specific acknowledgment of the criteria contained within the policy." The Plaintiffs contend that this concession equates to an admission that the Board acted without regard to its own policies, and therefore acted arbitrarily and capriciously.

¶ 12 The trial court disagreed, finding instead that the Board meeting minutes, the documents drafted and circulated to the Board pertaining to the closure decision, and the instructions to subcommittees charged with assisting in the closure evaluation are replete with discussion of the factors listed in the FLA document, and demonstrate the Board's compliance with its closure policies. Further, Superintendent Robles testified that she knew of the policy and that she specifically incorporated it into the guidelines the Board used in deciding whether and which schools to close. She did not cite the FLA document as the source of the policy consideration because she felt that the factors were so obvious and basic that doing so was unnecessary. The Board members also testified that the six factors in the FLA

document were important, driving concerns in the decision-making process. The trial court found the evidence to be clear that the basic factors contained in the FLA document were thoroughly discussed when the Board made the closure decision.

¶ 13 In addition, it is important to note that the language of the factors themselves portrays the discretionary nature of Board decisions. The factors are necessarily competing considerations, as there may be instances in which a newer facility that is more efficient and educationally functional may also be located slightly further away than an older, less functional school. The FLA document does not dictate a formula for deciding between schools that satisfy some but not all of the requirements. The policy itself requires the Board to exercise discretion in making these decisions.

¶ 14 For example, a preference for a newer but more distant school over a closer, older one is simply a matter of discretion itself, with no obvious answer under the FLA guidelines. Board members are to consider those factors in making their decisions; the members are not instructed as to how much weight each factor should receive. Rather, they were elected by their constituents to weigh the advantages and disadvantages of such alternatives.

¶ 15 Here, the trial court found that the Board did exactly that. Though the Board members did not have the specific FLA document in front of them during their deliberations, they did have documents that incorporated, without reference, the very factors outlined in the FLA document. Whether the Board placed increased emphasis on some of the factors over others or included additional factors in their analysis is the prerogative of the Board and is irrelevant to the determination of whether the Board acted without regard to the FLA policy. The record demonstrates that the Board considered each factor the FLA policy set forth. We hold that the trial court did not err in finding that the Board complied with its policies in making the closure decision.

¶ 16 We now address whether the trial court afforded proper deference to the Board when it sustained its decision to close the two elementary schools. We hold that it did.

## II. THE TRIAL COURT PROPERLY DEFERRED TO SCHOOL BOARD ACTION

■ ¶ 17 The trial court held that it would overturn the Board's decision only "if there was no reasonable basis for [that decision]." The Plaintiffs argue that such deference was inappropriate in this case because the decision constituted administrative, not legislative, action. Thus, they argue, courts reviewing school board decisions like the one at issue here must adopt a non-deferential "substantial evidence" standard. We disagree.

¶ 18 Under our case law governing school board action, the only question the courts have focused upon has been whether the action taken was within the Board's delegated powers to act, not whether the action was legislative or administrative. These cases have recognized that "a local school board is empowered to 'make and enforce rules necessary for the control and management of the district schools' and to 'do all other things necessary for the maintenance, prosperity, and success of the schools and the promotion of education.'" *Bd. of Educ. v. Ward,* 1999 UT 17, ¶ 9, 974 P.2d 824 (quoting Utah Code Ann. § 53A–3–402(14), (18) (2000) (current version at Utah Code Ann. § 53A–3–402(15)(a), (20) (Supp.2004))). We have repeatedly stated:

> " 'In harmony with the import of the statutes [governing the authority of school boards] is the fact that it is inherent in the nature of the board's function in managing school district business that it have a broad latitude of discretion in order to carry out its objective of providing the best possible school system in the most efficient and economical way.' "

*Id.* (quoting *Espinal v. Salt Lake City Bd. of Educ.,* 797 P.2d 412, 414 (Utah 1990) (brackets in original) (quoting *Ricker v. Bd. of Educ.,* 16 Utah 2d 106, 396 P.2d 416, 420 (1964))).

¶ 19 Further, we have emphasized a school board's broad discretion in interpreting its own policy, stating that such

"management, supervision and determination of policy are the prerogative and responsibility of school officials; and that the courts should be reluctant to enter therein; and indeed not to do so unless it is shown that the complainant was in some manner deprived of due process, or that the action of the board was *so entirely without justification that it must be deemed capricious and arbitrary.*"

*Id.* (emphasis added) (quoting *E.M. v. Briggs*, 922 P.2d 754, 757 (Utah 1996)) (further quotation omitted).

¶ 20 As found by the trial court, the Board did not act entirely without justification, nor did it interpret its FLA policy in an arbitrary and capricious way. The trial court found that the Board did in fact consider each and every policy factor that the Plaintiffs contend the Board was required to consider in making the closure decision. The fact that some members did not know the origin of those factors does not mean that they failed to consider them. Not only was the Board's action not "entirely without justification," the trial court found that it was pursuant to the very factors the Plaintiffs contend the Board was required to utilize. There is nothing in the record to demonstrate clear error in the trial court's finding.

¶ 21 Though the closure of one's neighborhood school is a sad event for those affected, that disappointment does not qualify a court to reevaluate an elected school board's decision unless that decision truly was without justification. The remedy for those dissatisfied with a school board's decision is in the voting booths on election day. We accordingly affirm.

## CONCLUSION

¶ 22 The trial court did not err in finding that the Board considered all of the policies enumerated in the FLA document. The Board closed the schools in an effort to save money to build new schools in the west side of the city that it determined was underserving its student population. The Board determined that the city, and the student population as a whole, would be best served if two of its east-side elementary schools, one of which was significantly under-populated and located on an undesirable lot, were closed and the students were redirected to another area.

¶ 23 Though this decision is an unpopular one with the parents of the affected children, the Plaintiffs cannot make out a plausible case that the decision was arbitrary and capricious. The trial court properly concluded that the Board considered all of the policies it was bound to consider, as borne out by trial testimony, Board documents, and minutes of the Board meeting. It is not this court's province to interfere in the decision made by that elected body in the absence of arbitrary and capricious decision-making. We affirm.

¶ 24 Chief Justice DURHAM, Justice DURRANT, Justice PARRISH, and Justice NEHRING concur in Associate Chief Justice WILKINS' opinion.