2005 UT App 199

**UTAH DEPARTMENT OF PUBLIC SAFETY, DRIVER LICENSE DIVISION, Petitioner and Appellee,**

v.

**ROBOT AIDED MANUFACTURING CENTER, INC., dba Explore Information Services; and State Records Committee, Respondents and Appellant.**

No. 20040010–CA.

Court of Appeals of Utah.

May 5, 2005.

---

Gary R. Thorup, Holmes Roberts & Owen, LLP, Salt Lake City, for Appellant.

Mark L. Shurtleff, Atty. Gen., and Thom D. Roberts, Asst. Atty. Gen., Salt Lake City, for Appellee.

Before BENCH, Associate P.J., DAVIS, and ORME, JJ.

## OPINION

ORME, Judge:

¶ 1 Appellant Robot Aided Manufacturing Center, Inc., doing business as Explore Information Services (Explore), appeals from the district court's decision to vacate a State Records Committee order granting Explore continuing access to driving record information, on literally tens of thousands of Utah drivers, in the same manner that Explore had previously received it. We affirm the district court.

## BACKGROUND

¶ 2 Explore is a Minnesota corporation, registered to do business in the State of Utah. As part of its business, Explore obtains driving record information contained within the motor vehicle records of various states and provides it to insurance companies for underwriting, rating, and claims investigating purposes. Pursuant to an agreement between Explore and the Utah Department of Public Safety's Driver License Division (the Division), which agreement has expired, Explore had received information concerning Utah drivers from the Division, on a monthly basis, since December 1996. The information Explore received was a list of all licensed Utah drivers who had received moving vehicle citations that were reported to the Division during the prior month. The information Explore received included a person's name, driver license number, date of birth, type of driving violation, and the date when the violation was recorded in the Division's database.[1] Explore would then match the names of those individuals reported for violations with names of individuals insured by the various insurance companies to whom Explore provides its services. The district court noted in its findings of fact that, through these reports, Explore obtained the identities of, and information about, 21,726 individuals in June of 2000, and 22,932 in July of 2000. The court also noted that Explore only successfully matches, on average, about 2% of those individuals reported with persons actually insured with the various insurance companies for which Explore works. In other words, 2% of what Explore learns as a kind of busy-body for hire is properly its business, while 98% is not.

¶ 3 On June 28, 2000, the Division informed Explore that it would not continue to provide records as requested by Explore because Explore failed to comply with the requirements of Utah Code section 53–3–104, see Utah Code Ann. § 53–3–104(9) (2002), and, additionally, because the records were private and Explore was not authorized to receive private records.[2] The Division interpreted section 53–3–104 to require that reports could only be prepared on a person-by-person basis and that a requestor must iden-

---

1. This information constitutes only a portion of the information the Division maintains in its files and records. The district court found that the Division maintains various records and files with regard to the over 1.4 million driver license and identification card holders in the State of Utah. The district court made specific findings as to the type of information these records and files contain, much of it including various items of personal information. For example, the personal information includes an individual's name, date of birth, social security number, mailing address, physical description, military status, and the answers to various medical questions. The Division's records also include information concern-

ing citation and arrest reports on DUI and drug arrests, records of convictions for traffic offenses, accident reports, financial responsibility information, reports regarding accidents, and various other types of personal information.

2. Even though the Division had given Explore the information it wanted—and in the format Explore wanted—for a four-year period, the Division decided that the contractual arrangement put the Division in violation of the law and that it could no longer deliver information to Explore as it had in the past.

tify the individual about whom the driving record information is sought when the request is made.

¶ 4 Explore appealed the Division's determination to the Department of Public Safety. The Department of Public Safety affirmed the Division's decision, and Explore then appealed the denial to the State Records Committee (the Committee). The Committee conducted a hearing and issued a decision in favor of Explore, granting Explore continued access to the driving record information it was accustomed to receiving. The Division petitioned the district court for judicial review of the Committee's decision. The district court determined that denial of access to the requested information was proper and lawful and that the Division "need not provide such information as requested."

## ISSUES AND STANDARD OF REVIEW

¶ 5 Explore challenges the district court's conclusions that section · 53–3–104 · governs and limits the disclosure of the Division's records and that the only manner in which Explore is entitled to receive driving record information from the Division is by requesting motor vehicle reports in accordance with Utah Code section 53–3–104. *See* Utah Code Ann. § 53–3–104(9) (2002). Explore also contends that the district court erred in concluding that Explore did not otherwise qualify to access the information it wanted, in the form it wanted, under the Government Records Access and Management Act (GRAMA), Utah Code Ann. §§ 63–2–101 to –1001 (1997 & Supp.2004).

 ¶ 6 The issues Explore raises on appeal present questions of statutory interpretation. "The proper interpretation of a statute is a question of law." *Rushton v. Salt Lake County,* 1999 UT 36, ¶ 17, 977 P.2d 1201. We review matters of statutory construction for correctness. *See id.* Our "review gives no deference to the trial judge's or

agency's determination, because the appellate court has 'the power and duty to say what the law is and to ensure that it is uniform throughout the jurisdiction.' " *Drake v. Industrial Comm'n,* 939 P.2d 177, 181 (Utah 1997) (citation omitted).

## ANALYSIS

¶ 7 Explore frames the issue in this appeal not as a question of whether Explore can obtain driving record information from the Division, but as a question of which sections of the Utah Code control Explore's access to the Division's records. The answer to this question will dictate the procedures Explore must follow to get the information it wants. Therefore, the appropriate starting point is to decide which statutory provisions apply to Explore's specific request for a monthly report listing the names of licensed Utah drivers who have been reported to the Division for receiving some sort of moving vehicle citation during that month.

¶ 8 Each party relies on a different section of the Utah Code and argues that it applies to Explore's request. Explore argues that the provisions of GRAMA apply to its request and that, pursuant to GRAMA, it is entitled to the information that it is requesting be culled from the Division's driving records and furnished to it in the manner it prefers. The Division argues that the district court correctly concluded that Explore's request for information triggers section 53–3–104 of the Uniform Driver License Act and that Explore is not entitled to have access to its records other than by requesting information pursuant to section 53–3–104.[3]

¶ 9 Section 53–3–104 specifically mandates that "[t]he [D]ivision shall: ... search the license files, compile, and furnish a report on the driving record of any person licensed in the state in accordance with Section 53–3–109." Utah Code Ann. § 53–3–104(9) (2002).

---

3. The dispute is not of merely theoretical interest to the parties. Explore claims that the Division's position and the district court's ruling, if affirmed, would cause Explore palpable economic hardship because it would be cost prohibitive for Explore to continue to provide its services to insurance companies in the same way it has done in the past. Explore contends that under

the district court's ruling, each month it will have to pay a fee for a separate motor vehicle report on every individual Utah driver insured by the insurance companies it provides services to, instead of simply paying a lower, fixed monthly fee to receive the information it wants and in the form it wants, as had previously been the parties' arrangement.

The referenced section 53–3–109 adds a number of provisions that set limitations, provide guidelines, and grant rulemaking authority to the Division on how the Division is to provide information from the records it is statutorily mandated to keep. *See* Utah Code Ann. § 53–3–109(1)–(6) (Supp.2004).[4]

¶ 10 GRAMA, on the other hand, was also enacted by the Legislature to provide guidelines for disclosing, and restricting access to, government records, specifying the conditions under which access will be granted. *See* Utah Code Ann. § 63–2–102 (1997). Explore's access to the Division's records largely depends on the interplay between the provisions of GRAMA and section 53–3–104, as both can potentially be interpreted as governing access to information found in the Division's records.

¶ 11 GRAMA is not the sole source of authority with regard to the disclosure of government records. When there is a conflict between GRAMA and another statute governing access to government records, GRAMA expressly provides that "[t]he disclosure of records to which access is governed or limited pursuant to … another state statute … is governed by the specific provisions of that statute." Utah Code Ann. § 63–2–201(6)(a) (Supp.2004). In other words, GRAMA specifically anticipates conflicts between its provisions that govern or limit the disclosure of government records and other statutes that purport to do the same. *See id.* While the other statute's "specific provisions" will control in the event of an irreconcilable conflict, GRAMA's provisions will still apply so long as they are "not inconsistent with the [other] statute." *Id.* § 63–2–201(6)(b). This means that if there is another statute outside of GRAMA that governs or limits access to government records,

it is possible for both GRAMA and that statute to simultaneously regulate disclosure of information in the government's possession. Again, however, where GRAMA's provisions and another statute governing or limiting the disclosure of records are in actual conflict, that other statute's provisions trump GRAMA's provisions.

■ ¶ 12 We must therefore analyze whether Utah Code section 53–3–104 "govern[s] or limit[s]" access to the Division's records, Utah Code Ann. § 63–2–201(6)(a), and, if so, whether, in the context of Explore's request, it is compatible or inconsistent with GRAMA. *See id.* § 63–2–201(6)(b). The district court concluded that the language of section 53–3–104 "governs or limits access to the information sought by Explore and therefore it controls its access." Explore asserts on appeal that the court erred in its conclusion because section 104 contains no language that purports to govern or limit access to the Division's records and it directs, by its own terms, that disclosure of the Division's records be governed and controlled by GRAMA. We disagree.

¶ 13 When we engage in statutory construction " '[w]e look first to the plain language of the statute to discern the legislative intent.' " *City of S. Salt Lake v. Salt Lake County,* 925 P.2d 954, 957 (Utah 1996) (citations omitted). We also follow the rule "that a statute should not be construed in a piecemeal fashion but as a comprehensive whole." *Clover v. Snowbird Ski Resort,* 808 P.2d 1037, 1045 (Utah 1991). Thus, we read the plain language of the statute as a whole, and interpret its provisions in harmony with other statutes in the same chapter and related chapters.[5] *See State v. Schofield,* 2002 UT

---

4. We cite to the current version of section 53–3–109 as a convenience to the reader, except where otherwise noted. We acknowledge that after 2000, when this dispute arose, the Legislature changed section 109 in a few respects. *See infra* note 8. The changes have not drastically altered the general content or the effect of section 109. *Compare* Utah Code Ann. § 53–3–109 (Supp. 2004), *with* Act of March 14, 2000, ch. 255, § 3, 2000 Laws of Utah 1047.

5. Regarding "whole statute" interpretation, the Utah Supreme Court has stated that " '[a] statute

is passed as a whole and not in parts or sections and is animated by one general purpose and intent. Consequently, each part or section should be construed in connection with every other part or section so as to produce a harmonious whole.' " *State v. Maestas,* 2002 UT 123, ¶ 54, 63 P.3d 621 (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 46:05 (4th ed.1984)). Thus we follow " 'the cardinal rule that the general purpose, intent or purport of the whole act shall control, and that all the parts be interpreted as subsidiary and harmonious to its manifest object.' " *Faux v. Mickelsen,* 725 P.2d

132,¶ 8, 63 P.3d 667, *cert. denied,* 540 U.S. 820, 124 S.Ct. 104, 157 L.Ed.2d 39 (2003). We also "avoid interpretations that will render portions of a statute superfluous or inoperative." *Hall v. Utah State Dep't of Corr.,* 2001 UT 34,¶ 15, 24 P.3d 958. .

¶ 14 We conclude that section 53–3–104 is a statute whose specific provisions are intended to govern or limit access to the Division's records, a possibility GRAMA specifically anticipates in section 63–2–201. *See* Utah Code Ann. § 63–2–201(6)(a). Therefore, we reject Explore's argument that section 53–3–104 contains no language that purports to govern or limit the disclosure of information in the Division's records, and that it contains no language directing that its provisions supercede those of GRAMA. On the contrary, section 104 gives the Division the statutory duty to maintain driving records on individuals licensed in Utah and further commands the Division that it "shall ... search the license files, compile, and furnish a report on the driving record of any person licensed in the state *in accordance with Section 53–3–109.*" Utah Code Ann. § 53–3–104(9) (2002) (emphasis added). This language indicates that in fulfilling its duty to prepare and provide a report on a person's driving record, the Division must do so in accordance not with GRAMA, but with Utah Code section 53–3–109. *See id.* Thus, to determine whether this provision in section 104 governs or limits access to the records the Division keeps, it cannot be read in isolation; it must be read by incorporating section 53–3–109's provisions, which are expressly referenced in section 104. We therefore turn to section 109 to determine whether its provisions add governing or limiting language to section 104 in a way that restricts the disclosure of the Division's records notwithstanding its explicit duty to report on a person's driving record as provided in section 104.

¶ 15 Section 109 reveals much about section 104's governing and limiting effect over the disclosure of the Division's records when a request is made for information about Utah drivers. The provisions of section 109 indicate exactly how the provisions of sections 104 and 109 are to interact with GRAMA's disclosure guidelines. *See* Utah Code Ann. § 53–3–109(1)(a) (Supp.2004). Section 109 also shows that in fulfilling its duty in section 104, the Division has specific limitations placed upon the disclosure of information in its records and there are certain guidelines that it must follow. *See id.* § 53–3–109(1)(b), (2). Section 109 also reveals that even at the time this dispute arose, the Division had rulemaking authority to set its own guidelines to govern what information from its data base it would include in a report on the driving record of a person. *See* Act of March 14, 2000, ch. 255, § 3, 2000 Laws of Utah 1047.

¶ 16 As concerns the relationship of sections 104 and 109 to GRAMA, section 109 states that "[e]xcept as provided in this section, all records of the division shall be classified and disclosed in accordance with [GRAMA]." Utah Code Ann. § 53–3–109(1)(a). Explore relies on this subsection in arguing that even if sections 104 and 109 are read together to govern or limit disclosure of information in the Division's records, they provide by their own language that disclosure of the Division's records is to be exclusively governed by GRAMA. We read this language differently. The phrase "[e]xcept as provided in this section" indicates that the provisions that follow are expressly intended to supercede those of GRAMA and that GRAMA only applies to matters not directly covered by the provisions of sections 104 and 109. To read this language otherwise ignores the substance of the remaining provisions in section 109 and renders them superfluous and inoperative.[6]

---

1372, 1375 (Utah 1986) (quoting 2A Norman J. Singer, Sutherland Statutory Construction § 46:05 (4th ed.1984)).

**6.** To countenance Explore's argument that section 109's reference to GRAMA clearly means that disclosure of the Division's driving records is governed by the provisions of GRAMA renders the section's provisions concerning the disclo-

sure of personal identifying information and the Division's rulemaking authority wholly meaningless. We "avoid interpretations that will render portions of a statute superfluous or inoperative." *Hall v. Utah State Dept. of Corr.,* 2001 UT 34,¶ 15, 24 P.3d 958.

¶ 17 We also read section 109 to place clear limitations on the Division's disclosure of information by stating that "[t]he [D]ivision may only disclose personal identifying information [from its records] . . . when [it] determines it is in the interest of the public safety to disclose the information; and . . . in accordance with the federal Driver's Privacy Protection Act of 1994, 18 U.S.C. Chapter 123." [7] *Id.* § 53–3–109(1)(b)(i)–(ii). Section 109 also places limitations on the ways in which a person can or cannot use information the Division discloses. *See id.* § 53–3–109(2) (directing the Division to advise a "person who receives personal identifying information" about the limited ways the person can use the information). Additionally, section 109 authorizes the Division to collect fees for "searching and compiling its files or furnishing a report on the driving record of a person." *Id.* § 53–3–109(3)(a). Moreover, section 109 gives the Division the authority to make rules to govern what information will be contained in the report it furnishes pursuant to section 53–3–104 on the driving records of Utah drivers once the Division has determined that it is in the interest of "public safety" to disclose information from its records. *Id.* § 53–3–109(1)(b)(i), (6). [8]

¶ 18 Consequently, the Division has determined it is in the interest of public safety to provide for limited public disclosure of "information regarding the driving record of licensed drivers in Utah" and the Division has exercised its authority to enact rules that govern what information it will disclose. Utah Admin. Code R708–36–1 (2004). Under this authority, the Division has designated that the "report" it will furnish in fulfillment of its statutory duty in section 104 will be a "Motor Vehicle Record," *id.*, and has determined what its contents will include. *See id.* R708–36–3.

¶ 19 Because the provisions of section 109 clearly add limiting and governing authority to the provisions of section 104, when the Division's duty to furnish reports on Utah drivers is invoked, section 104 becomes the statutory mandate on how the Division will comply. We conclude, therefore, that the district court correctly ruled that section 53–3–104, when read as a whole, is a statute that GRAMA recognizes, pursuant to Utah Code Ann. § 63–2–201(6)(a) (Supp.2004), will limit disclosure of information in the Division's records.

7. The Driver's Privacy Protection Act's definition of "personal information" helps identify what type of information our Legislature has intended to limit disclosure of under Utah Code section 53–3–109. "[P]ersonal information" is defined as "information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5–digit zip code), telephone number, and medical or disability information, but does not include information on vehicular accidents, driving violations, and driver's status." 18 U.S.C.A. § 2725(3) (2000 & Supp.2004).

8. Subsequent to the events in 2000 that gave rise to this dispute, the Legislature amended section 109, renumbering this particular subsection and adding several additional provisions that expressly enhanced the scope of the Division's rulemaking authority. *See* Utah Code Ann. § 53–3–109(6)(a)–(c) (Supp.2004). Nevertheless, both before and after the amendment, the Division clearly had rulemaking authority under section 109 to control what information it would include in a report when it received a request for a report on a person's driving record. *Compare* Utah Code Ann. § 53–3–109(6)(a) (Supp.2004), *with* Act of March 14, 2000, ch. 255, § 3, 2000 Laws of Utah 1047. Moreover, the additional provisions the Legislature added to subsection (6) are very telling as to what kind of governing authority the Legislature intended the Division to have over its records under section 109's grant of rulemaking authority. The current version of section 109 now expressly gives the Division the authority to make rules concerning "what information shall be included in a report on the driving record of a person," Utah Code Ann. § 53–3–109(6)(a) (Supp.2004); "the form" the report will take, *id.* § 53–3–109(6)(b); and the form in which a request must be made to receive a report. *See id.* § 53–3–109(6)(e).

Consequently, under either version of section 109, this express grant of authority conflicts with the provision of GRAMA that Explore cites for the proposition that the Division cannot deny Explore's request for information based on the format in which the information is requested. *See* Utah Code Ann. § 63–2–201(8)(b) (Supp. 2004). The Division simply cannot have the power to determine what information it will include in its reports on the driving records of licensees while simultaneously being compelled under GRAMA to provide a report with whatever information, in whatever format, the requestor wants. As we have determined that Utah Code section 53–3–109's provisions supercede those of GRAMA, section 109 trumps when the two can not be harmoniously applied.

¶ 20 Nevertheless, Explore takes issue with the district court's conclusion that the only manner by which Explore is entitled to access the Division's driving record information is under section 53–3–104.[9] Explore contends that section 104 is only triggered by a request for a formal Motor Vehicle Record (MVR) prepared by the Division and designated as such in accordance with section 53–3–104 and the Division's rulemaking authority. Explore argues that its request for information is different from the more traditional request the Division receives for driving record information that comes in the form of a formal MVR.[10]

¶ 21 Specifically, Explore asserts that its request for information seeks only a scintilla of information on a person's driving record that an MVR contains and, therefore, its request should not be treated under section 104 as a request for an MVR.[11] Since its request does not constitute a request for a complete MVR, Explore argues that it should not be required to follow the procedures for requesting an MVR from the Division under section 104 or pay for an MVR in order to obtain the "limited" amount of information it wants. Thus, Explore contends that because of the nature of its request, GRAMA gives Explore an additional statutory basis—one that is separate and distinct from section 53–3–104—for receiving, without its having to comply with the Division's interpretation of section 104, the type of driving record information it seeks.

¶ 22 We agree with the Division that the district court correctly ruled that Explore's request triggers Utah Code section 53–3–104, not GRAMA's provisions, and that Explore is not entitled to have access to the records because it did not request the records in accordance with section 104. Although Explore is not specifically asking the Division for a formal MVR, by asking the Division to provide a list of persons who have been cited for driving violations it is still requesting that the Division "search the license files, compile, and furnish a report on the driving record of . . . person[s] licensed in the state." Utah Code Ann. § 53–3–104(9) (2002). As a result, we see Explore's request as triggering section 104, because section 104's plain language is broad enough to include Explore's request that the Division search its records and furnish a monthly report that lists information about licensees who have been cited for driving violations each month. Moreover, because the information Explore is requesting contains personal identifying information, such as a person's name, driver license number, and date of birth, the disclosure of which is expressly addressed in Utah Code Ann. § 53–3–109(1)(b) (Supp.2004), we conclude sections 104 and 109 are directly applicable to Explore's request.[12]

9. The district court held "[t]hat if Explore complies with the requirements of [section] 53–3–104 as interpreted and enforced by the Division, by identifying the licensee as an individual prior to the request, and pay[s] any applicable fees, that it may receive the motor vehicle report on the individual, otherwise it may not."

10. In other words, Explore seeks to limit the application of section 104 to requests for a formal MVR on the driving record of persons licensed in Utah and not to its request for information from the Division in a format that is something other than a formal MVR.

11. Explore argues that its request for information is different because rather than separately submit to the Division the names of each Utah licensee insured by a company it represents and purchase a formal MVR on each such individual, which admittedly would trigger section 104, Explore instead requests that the Division identify, on a monthly basis, all Utah licensees who have violated Utah's moving vehicle laws. Such a request, Explore maintains, seeks only part of the more complete information that an MVR contains and, therefore, is not a request that fits under section 104.

12. Explore's request is fundamentally no different than Average Joe's request for a copy of his own driving record, with the Division responding by supplying him with a formal MVR. His request clearly falls within the purview of Utah Code section 53–3–104, since the Division is "search[ing] the license files, compil[ing], and furnish[ing] a report on the driving record" of Average Joe. Utah Code Ann. § 53–3–104(9) (2002). Even if Average Joe were to ask that the Division give him a printout that listed just his reported driving infractions, we see nothing in the language of section 104 that would exempt its application to his more specific request, since he is still requesting the Division to "search the license files, compile, and furnish a report" on his driving record. *Id.*

¶ 23 Nevertheless, Explore points out what seems to be an inconsistency with the Division's position that section 104 is triggered any time the Division is asked to "search the license files" and "furnish a report," regardless of whether the "report" that a person is asking for is a formal MVR or not. Utah Code Ann. § 53–3–104(9). Explore suggests that if the term "report" in section 104 specifically means an MVR, then it is inconsistent to argue that section 104 is triggered when the Division is asked to "search the license files" and "furnish a report" if a person is not asking specifically for an MVR.

¶ 24 We are able to reconcile this apparent discrepancy in the use of the term "report" because section 104's specific reference to section 53–3–109 gives the Division the authority to make rules concerning what information its "report" on a person's driving record will include. *See* Utah Code Ann. § 53–3–109(6)(a). Thus, once the Division's duty to furnish a "report on the driving record of [a] person" is triggered, Utah Code Ann. § 53–3–104(9), it is then fulfilled in accordance with section 109's directive that the Division may make rules to specifically designate that the "report" it will provide in response to any request for a report on the driving record of a licensee will be limited to an MVR.[13] Utah Code Ann. § 53–3–109(6)(a).

¶ 25 Our conclusion that Explore's request for information about the driving records of Utah drivers falls under section 53–3–104 and that Explore must abide by the Division's implementation of that section, must not be read to imply that GRAMA has no application whatsoever to the disclosure of information found in the Division's records. We acknowledge that GRAMA's provisions continue to apply so long as they are "not inconsistent with the [provisions of section 53–3–104]" as we have interpreted them in this opinion.[14] Utah Code Ann. § 63–2–201(6)(b) (Supp.2004).

## CONCLUSION

¶ 26 We conclude that Explore's request triggers the Division's duty to "search the license files, compile, and furnish a report on the driving record of any person licensed in the state," Utah Code Ann. § 53–3–104(9) (2002), and that the specific provisions of section 53–3–104 and 53–3–109 govern and limit access to information in the Division's records concerning Utah drivers so as to preclude the application of any inconsistent provisions of GRAMA. Therefore, Explore must comply with section 53–3–104 in order to gain access to information of the sort it is requesting. It follows that the district court's judgment validating the Division's position and rejecting that of the State Records Committee is correct.

¶ 27 Affirmed.

¶ 28 WE CONCUR: RUSSELL W. BENCH, Associate Presiding Judge and JAMES Z. DAVIS, Judge.

13. It is obviously a matter of great administrative convenience for the Division to have a standard report form. Conversely, it would be an administrative headache if the Division were required to provide information in precisely the form requested by each individual requestor. Thus, when Average Joe goes to the Division and requests that the Division provide him with a list of all of his reported driving violations in a particular car or county, which triggers Utah Code section 53–3–104 by invoking the statutory mandate that the Division search, compile, and furnish a report on his individual driving record, the rulemaking authority granted to the Division under Utah Code section 53–3–109 gives the Division the ability to determine how it will respond to Average Joe's request and the form the "report" will take. As a result, Average Joe cannot compel the Division to produce a unique report to fit his specific request. Under section 109 the Division has the express statutory authority to limit the "report" it will provide Average Joe to an MVR, from which he can then glean the exact information he wants. The same is true for anyone else, including Explore.

14. For example, if Explore's request were merely for bare, numerical statistics that concerned how many vehicle-related violations were reported to the Division in the last month, minus the inclusion of any personal identifying information, the request would likely not fall under Utah Code section 53–3–104 and, therefore, would not be constrained by section 104 nor any rules enacted pursuant thereto. Such a request for disclosure of records would more properly be analyzed under GRAMA's provisions.