2005 UT App 513

**In the matter of Darla VANN, an incapacitated person.**

**Office of Public Guardian, Petitioner and Appellee,**

v.

**Penny Vann, Respondent and Appellant.**

**No. 20041128–CA.**

Court of Appeals of Utah.

Dec. 1, 2005.

---

Steven C. Russell, Salt Lake City, for Appellant.

Mark L. Shurtleff, J. Stephen Mikita, and Joanna B. Sagers, Salt Lake City, for Appellee.

Before Judges BENCH, DAVIS, and McHUGH.

## OPINION

BENCH, Associate Presiding Judge:

¶ 1 Appellant Penny Vann appeals the district court's order appointing the Office of Public Guardian (OPG) as permanent limited guardian of Darla Vann. We affirm.

## BACKGROUND

¶ 2 Darla is a thirty-two-year-old mentally retarded adult. Penny is Darla's mother and was her caregiver prior to OPG's appointment. The Division of Services for People with Disabilities (DSPD) had provided Darla support services, including supported employment, for over four years. During that time, DSPD became suspicious that Penny was financially exploiting, emotionally and physically abusing, and neglecting Darla.

¶ 3 DSPD informed the Division of Aging and Adult Services (DAAS) of its suspicions. Based on this referral, DAAS investigated Penny and Darla's relationship. DAAS discovered that Penny administered "diet pills" to Darla, which adversely affected Darla's work performance and her ability to interact with others. Penny refused to specify the nature and scope of Darla's medical treatment, the amount of support Darla received from the Social Security Administration and the Veteran's Administration, how she spent Darla's money, and the location of Darla's bank accounts. DAAS also discovered that Penny exchanged clothes that DSPD had purchased for Darla, for larger sizes that fit Penny. Penny insisted that DSPD terminate Darla from the Medicaid Waiver, which would have eliminated all of Darla's DSPD services. When Penny and Darla met with staff members from DAAS and DSPD at an annual review meeting, staff members observed that Penny intimidated, shoved, pinched, and manipulated Darla to influence her responses regarding her personal safety and welfare.

¶ 4 On May 28, 2004, based on the evidence and the findings of DAAS and DSPD, the court issued an emergency order appointing OPG as Darla's temporary limited guardian. Pursuant to its appointment, OPG removed Darla from Penny's residence. OPG then filed a Petition for Appointment of Limited Guardianship of an Incapacitated Person (Petition for Limited Guardianship) and gave Penny notice of the hearing. Penny filed an objection to OPG's petition, but has never filed a competing petition to be appointed Darla's guardian. The court held the hearing and, based on Penny's objection, ordered mediation.

¶ 5 Prior to the scheduled mediation, Penny filed a Motion for Order Striking Emergency Order of Guardianship. She claimed that the emergency order had expired, she was entitled to notice prior to Darla's removal, and she had a fundamental right of family association with Darla that the State could not interfere with absent an emergency or a showing of unfitness. She attached several affidavits refuting the findings of DAAS and DSPD and supporting her claim that no emergency existed. The district court held a hearing on Penny's motion and concluded that because "Darla Vann is a [thirty-two-year-old] adult, her mother, Penny Vann, has no standing to Darla's control and custody absent her appointment as Darla's guardian. Penny has never been appointed Darla's guardian." The court found that OPG properly filed a Petition for Limited Guardianship after obtaining an emergency order. The court ruled that, as an interested party, Penny could contest the propriety of that petition at the hearing for permanent limited guardianship.

¶ 6 In October 2004, the court held the hearing on OPG's Petition for Limited Guardianship. The court found that Penny still had not filed a competing petition of guardianship. The court also found that Penny had presented no evidence to challenge the propriety of OPG's appointment or to establish that she was fit to be appointed guardian. Because OPG was the only party to seek appointment of guardianship and prove its propriety, the court granted the appointment. Penny now appeals.

## ISSUES AND STANDARDS OF REVIEW

¶ 7 First, Penny asserts that the district court erred by removing Darla from Penny's custody without notice. Second, Penny contends that the district court erred in appointing OPG as Darla's permanent limited guardian without requiring it to prove that Penny was unfit.

¶ 8 The law governing guardianship of incapacitated adults is addressed in Utah Code sections 75–5–301 to –311. *See* Utah Code Ann. §§ 75–5–301 to –311 (1993 & Supp. 2005). "Matters of statutory construction are questions of law that are reviewed for

correctness." *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997). "Questions of fact are reviewed under the clearly erroneous standard, with deference given to the trial court." *Id.* "The trial court's application of the law to the facts is reviewed for abuse of discretion." *Id.*

## ANALYSIS

### I. Appointment of Temporary Limited Guardian

¶ 9 Penny contends that because of a family association, the court erred in removing Darla from Penny's custody without proper notice. Penny argues that her right of family association did not expire when Darla reached the age of majority.

¶ 10 In addressing guardianship of incapacitated adults, the legislature has specified when notice is required. Utah Code section 75–5–309 provides "[i]n a proceeding for the appointment . . . of a guardian of an incapacitated person *other than the appointment of a temporary guardian* . . . notice of hearing shall be given to . . . [the ward's] parents." Utah Code Ann. § 75–5–309 (1993) (emphasis added). The court "may, *without notice,* appoint an appropriate official as temporary guardian." Utah Code Ann. § 75–5–310 (1993) (emphasis added). Therefore, Penny did not have the right to notice before the court appointed OPG as Darla's temporary limited guardian. Notably, as the parent of an incapacitated adult, Penny correctly received notice of all subsequent appointment proceedings pursuant to section 75–5–309.

¶ 11 Additionally, the district court did not err by appointing OPG as the temporary guardian. Section 75–5–310 provides,

[i]f an incapacitated person has no guardian and an emergency exists or if an appointed guardian is not effectively performing his duties and the court further finds that the welfare of the incapacitated person requires immediate action, it may, without notice, appoint an appropriate official as temporary guardian for the person for a specified period not to exceed 30 days pending notice and hearing.

*Id.* Two state agencies, DAAS and DSPD, gathered evidence and concluded that Penny, Darla's caregiver, had exploited, abused, and neglected Darla.[1] Because Darla did not have an appointed guardian and the evidence before the district court supported a finding of emergency conditions, the court properly appointed a temporary guardian. Even assuming that Penny had some right to guardianship because of a family association, the evidence before the district court would support a finding that Penny was not fulfilling the duties of a guardian. *See id.* Therefore, the district court did not abuse its discretion in appointing OPG as Darla's temporary limited guardian. *See Platts,* 947 P.2d at 661 ("The trial court's application of the law to the facts is reviewed for abuse of discretion.").

## II. Appointment of Permanent Limited Guardian

¶ 12 Penny asserts that she is entitled to a presumption of parental fitness, and therefore, the court should have required OPG to overcome that presumption before appointing OPG as Darla's permanent limited guardian. Penny cites multiple cases in her brief to support her claim of a parental presumption. The cases Penny cites address parental rights, child support, and custody issues. However, this case is not about parental rights to a minor child. This case concerns the guardianship of an incapacitated adult, which is specifically addressed by statute. *See* Utah Code Ann. §§ 75–5–301 to –311.[2] Because Darla is a thirty-two-year-old incapacitated adult, her guardianship is governed by Utah Code sections 75–5–301 to –311, titled "Guardians of Incapacitated Persons." *Id.* In interpreting a statute, "we look first to the plain language of the statute to discern the legislative intent." *State Dept. of Pub. Safety v. Robot Aided Mfg. Ctr., Inc.,* 2005 UT App 199, ¶ 13, 113 P.3d 1014 (quotations and citation omitted).

¶ 13 Utah Code section 75–5–311(2) specifically provides that "[a]ny competent person or a suitable institution may be appointed guardian of an incapacitated person." Utah Code Ann. § 75–5–311(2) (Supp.2005). The interested party may petition the court "for a finding of incapacity and appointment of a guardian." Utah Code Ann. § 75–5–303 (1993). Section 75–5–311 further details a priority list for appointment, stating that "persons ... have priority for appointment as guardian in the following order ... (d) a parent of the incapacitated person...." Utah Code Ann. § 75–5–311(4). Thus, the legislature has provided that a parent has a priority in the appointment of a guardian. Absent a petition from a parent, however, there is no priority in the statute that affects the court's appointment of another interested and competent party. *Cf. Associated Gen. Contractors v. Board of Oil, Gas & Mining,* 2001 UT 112, ¶ 30, 38 P.3d 291 (stating that the court "will not infer substantive terms into the text that are not already there" (quotations and citation omitted)).

¶ 14 Penny also argues that the district court incorrectly allocated the burden of proof in finding that "Penny Vann offered no evidence to prove the inappropriateness and unfitness of OPG as Darla's guardian." However, the court found that "Penny Vann did not file a competing Petition of Guardianship ... to be appointed Darla's guardian, [and further she] offered no evidence that she was fit to be appointed guardian by this Court." "OPG was the only party who filed a Petition of Guardianship in this case." As

---

1. Penny claims that she did not exploit, abuse, or neglect Darla, and therefore, emergency conditions did not exist to warrant a temporary order. With her Motion for Order Striking Emergency Order of Guardianship, Penny submitted multiple affidavits from close associates to support her claim. Penny, however, did not have a right to notice and hearing prior to the appointment of a temporary guardian. *See* Utah Code Ann. §§ 75–5–309 to –310 (1993). Therefore, the district court did not err in basing its decision of temporary guardianship solely on the findings of DAAS and DSPD at the ex parte proceeding.

2. If the legislature intended for laws governing parental rights, child support, and custody to also control issues dealing with guardianship of incapacitated adults, it could have easily included such intention in the language of the statute. *See Lieber v. ITT Hartford Ins. Ctr., Inc.,* 2000 UT 90, ¶ 7, 15 P.3d 1030 ("The best evidence of the true intent and purpose of the legislature in enacting a statute is the plain language of the statute.").

# 74

Darla's parent, Penny had a right and a priority of appointment. *See* Utah Code Ann. § 75–5–311. But she never filed a petition of guardianship for such appointment. Penny appeared in court merely to object to OPG's appointment as guardian. In this procedural posture, as the objecting party, Penny had the burden of showing that OPG was not an appropriate guardian.

## CONCLUSION

¶ 15 Because OPG was the only party to file a Petition for Limited Guardianship of Darla, and OPG is a proper and fit guardian, the court did not err in the appointment. We therefore affirm.

¶ 16 WE CONCUR: JAMES Z. DAVIS and CAROLYN B. McHUGH, Judges.