2019 UT App 56

## THE UTAH COURT OF APPEALS

IN THE MATTER OF LANDON KIRK JACOBSON

CHARITY STILSON,
Appellant,
*v.*
LANDON KIRK JACOBSON,
Appellee.

Opinion
No. 20180018-CA
Filed April 11, 2019

Seventh District Court, Castle Dale Department
The Honorable Douglas B. Thomas
No. 153700010

Joseph C. Rust, Attorney for Appellant

Steve S. Christensen and Clinton R. Brimhall,
Attorneys for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and RYAN M. HARRIS concurred.

APPLEBY, Judge:

¶1     Charity Stilson appeals the district court's ruling denying her request for costs and expenses incurred while serving as Landon Kirk Jacobson's guardian and conservator. We affirm.

## BACKGROUND

¶2     In August 2015, Jacobson suffered a severe brain injury in an accident that also claimed the lives of his wife and one of their children. The district court appointed Stilson—Jacobson's sister—as his guardian and conservator. Jacobson's

mother-in-law and Stilson were appointed as co-guardians of Jacobson's surviving minor children. In October 2015, the district court signed an order proposed by Jacobson's mother-in-law and Stilson that terminated the co-guardianship and allowed Jacobson to reassume responsibility for his children.

¶3     In December 2016, Stilson petitioned the district court to be reappointed as the children's guardian. Jacobson responded by filing a motion for permission to appoint counsel to assist him in opposing Stilson's petition. Stilson filed an objection to Jacobson's request for counsel, arguing that, as Jacobson's guardian and conservator, she was "authorized to represent him in all legal matters," and he was therefore "not in a legal position to employ a lawyer" without her consent.

¶4     The district court held a hearing to address Stilson's petition. At the hearing, the court first explained that "to be represented by counsel in a court proceeding [is] fundamental" and denying Jacobson that right would be "a deprivation of due process." It then expressed "concerns" that, fourteen months prior to her petition, Stilson represented to the court that Jacobson was competent to care for his children, "and now she wants to come forward and say he is not competent . . . and can't be heard on that issue." Accordingly, the court explained that it would first determine whether Stilson "should be released" as Jacobson's guardian and conservator before considering her petition to be reappointed as the children's guardian.

¶5     Stilson requested a "complete trial" on whether her guardianship and conservatorship over Jacobson should be terminated. In February 2017, Jacobson filed a counter-petition, asking the court to remove Stilson as his guardian and conservator. He asserted that his "incapacity [had] terminated" as he had demonstrated by "regaining his driver license, returning to his work on the farm, adequately caring for himself day to day, and caring for his . . . children for the past 14 months." He also said that "good cause exists" to remove Stilson

as guardian and conservator because she "is not qualified to act as conservator" and "[f]riction within the family has arisen due to [her] appointment."

¶6    One week later, Stilson filed a response to Jacobson's petition to remove her as his guardian and conservator. She identified three doctors who had "treated Jacobson since his accident" and asserted that each of them had "determined that Jacobson does not have the capacity to act for himself in significant and meaningful matters, either as to his own person or as to his assets."

¶7    In May 2017, Stilson submitted to the district court her resignation as Jacobson's guardian and conservator. The resignation stated that "Stilson's efforts have unfortunately been made more difficult than they needed to be by some of Jacobson's family members" and "[t]his additional burden has made serving as guardian and conservator now virtually impossible." But Stilson said she "would strongly argue against" Jacobson's petition to terminate his guardianship and conservatorship and requested that the court appoint a replacement. Around the time Stilson submitted her resignation, her attorney "represented to the [court] that she desired to proceed as an interested person" in challenging Jacobson's petition.

¶8    One week later, the court held a conference with Stilson, Jacobson, and their attorneys. "[I]n light of [Stilson's] filed resignation," the court said it needed to conduct "an evidentiary hearing to determine whether [Jacobson] still needs a guardian and/or a conservator." The court scheduled a two-day hearing for that purpose.

¶9    At the hearing, various experts testified, including a neuropsychologist (Dr. E). Dr. E first evaluated Jacobson four months after the accident. In January 2017, Stilson contacted him and "expressed concerns about [Jacobson's] daily functioning, cognitive functioning, and decision-making" and requested that

he "conduct a comprehensive psychological evaluation." Dr. E said that Stilson was "very emotional about the problems and concerns she reported" and his impression was that her "concerns seemed to be over the top."

¶10    Over about six weeks, Dr. E gave Jacobson "psychological counseling and cognitive therapy" and tested his "executive functioning" and "memory." He also spoke with Jacobson about his ability to manage money. Dr. E concluded that Jacobson did not need a guardian or conservator and could "manage and provide for his physical health, safety, and self-care." After forming his opinion, however, Dr. E "recommended [to Stilson] that [Jacobson] undergo a neurological assessment conducted by an independent evaluator."

¶11    A clinical and forensic psychologist (Dr. D) testified next. Stilson's attorney asked Dr. D to evaluate Jacobson after Dr. E recommended an independent neurological assessment. In forming his opinion, Dr. D relied on one interview with Jacobson—which Stilson attended—as well as a "collateral interview" with Stilson. He said he believed Jacobson needed a guardian and conservator because he "lacked the capacity to manage his finances and those of his business and children." Dr. D had a history of working with Stilson's attorney's law firm. He also worked with Stilson in a personal injury case, in which he diagnosed her with "somatic symptom disorder" and "separation anxiety disorder." Dr. D "described [Stilson] as being overly concerned about health issues."

¶12    Three more experts testified: a neuropsychologist (Dr. S), a physical medicine and rehabilitation doctor (Dr. L), and a psychologist (Dr. G). Dr. S recommended that Jacobson "receive continued assistance with financial and other decisions," and Dr. L "opined that [Jacobson] still needs someone to manage his financial affairs." But Dr. S "relied almost completely on the information provided to him by [Stilson]," and when Dr. L and Dr. D "were asked about [Jacobson's] abilities absent [Stilson's]

assertions, both doctors admitted that they would consider [Jacobson] capable of managing his own affairs without the need for a guardian or conservator." Dr. G prepared to testify by interviewing Jacobson and reviewing his medical and surgical records as well as the testing Jacobson had completed. He offered his opinion that Jacobson did not need a guardian or conservator and "had no cognitive problems that would prevent him from safeguarding his assets."

¶13 After the hearing, the court ruled that Stilson had "failed to show by even a preponderance of the evidence" that Jacobson was unable to adequately and appropriately care for himself and his children. Specifically, although "her concerns may have been valid immediately after the accident and during the early stages of his recovery," they "were no longer present after her resignation." And Stilson's "continued concerns about [Jacobson] were unwarranted and not based on any facts presented to the Court." The court then issued an order terminating Stilson as guardian and conservator, denying her petition to appoint a replacement, and granting Jacobson's petition to terminate the guardianship and conservatorship.

¶14 At the court's request, Stilson submitted a final guardian and conservator accounting. She requested that "costs and expenses she incurred in her role as guardian and conservator . . . be approved for payment from [Jacobson's] estate." Those costs and expenses included fees for Dr. D's evaluation of Jacobson as well as expert and attorney fees incurred in litigating whether Jacobson needed a guardian and conservator. Stilson noted that Jacobson had previously agreed to pay her "$1500 per month" for her efforts as guardian and conservator, but her accounting said, "Stilson herewith waives any such fees for herself which have not been paid."

¶15 The district court approved in part and denied in part Stilson's request for costs and expenses. The court's ruling first noted that conservators may "prosecute and defend actions" and

"employ persons, including attorneys . . . to advise or assist in the performance of administrative duties." (Quoting Utah Code sections 75-5-424(4)(x) and 75-5-424(4)(w).) But it clarified that a conservator may use funds of the estate only if the conservator is "*acting reasonably in efforts to accomplish the purpose for which the conservator was appointed*." (Quoting Utah Code section 75-5-424(4).) Under that standard, the court approved "reasonable costs and attorney fees . . . for work done on [Jacobson's] accident case . . . and work done to assist [Stilson] in her duties managing [Jacobson's] estate."

¶16 The court then concluded that Stilson was "not entitled to an award of costs and expenses for [Dr. D] in his role as medical examiner." Although the court acknowledged that Dr. E "recommended [Jacobson] undergo an independent neuropsychological evaluation," it determined that retaining Dr. D for that purpose "was wholly unreasonable." Specifically, the court found that Dr. D "is neither an independent evaluator nor even a neuropsychologist."

¶17 Next, the court denied Stilson's request for expert and attorney fees incurred in opposing "the removal of [Jacobson's] guardianship and conservatorship." It supported this ruling on two grounds. First, it determined that Stilson did not challenge Jacobson's petition "in her capacity as conservator" but only as an "interested person." The court said that, at the time of Stilson's resignation, her attorney "represented to the court that she desired to proceed as an interested person and challenge [Jacobson's] petition." And it explained that "[a]n interested person may only recover costs and expenses in seeking or defending a guardianship or conservatorship if the court appoints the party or designated individual as guardian or conservator over the protected person." (Citing Utah Code sections 75-5-303(2) and 75-5-414.)

¶18 Second, the court determined that, "[e]ven if [Stilson] had some duty as conservator," her opposition to Jacobson's petition

was not only "unreasonable and contrary to [Jacobson's] best interests," but it was "conducted in bad faith." Although Stilson's "concerns may have been valid immediately after the accident and during the early stages of [Jacobson's] recovery," the court found that "those concerns were no longer present after her resignation" and it was therefore unreasonable for her to oppose Jacobson's petition. The court said that Stilson "had information from [Dr. E], which was not based on her misrepresentations of Jacobson's abilities, to indicate that [Jacobson] was fully capable of managing his own affairs." And it was "unreasonable for [Stilson] to over-exaggerate [Jacobson's] limitations to his treating physicians, thus causing them to form unreliable opinions as to his capabilities, and then rely on those flawed opinions caused by her own misrepresentations to justify her actions."

¶19    The court also found that Dr. D "took [Stilson's] account virtually at her word," despite having diagnosed her with "somatic symptom disorder" and "separation anxiety disorder." The court's ruling explained: "somatic symptom disorder . . . is characterized by complaints of physical illness that either go beyond the scope of what would be typical for a person with the same illness or that the person uses to control or manipulate other people" and "separation anxiety disorder . . . is a persistent and excessive worry about losing major attachment figures."

¶20    After approving or denying Stilson's various requests, the court ordered her to reimburse the estate for money she used to pay costs and attorney fees to which she was not entitled. The court noted that Stilson had not received her agreed upon compensation—$1,500 per month—during her final five months as Jacobson's guardian and conservator. But it refused to use that unpaid amount to offset what she owed the estate because Stilson "waived her claim to receive [that] fee" and "provided no information to the Court regarding any work she actually performed managing [Jacobson's] estate or his business during that time period that would indicate this fee was reasonable."

¶21     Stilson appeals.


ISSUES AND STANDARDS OF REVIEW

¶22     Stilson appeals the district court's ruling on her request for costs and expenses. First, she argues the district court erred "in denying [her] request for legal and expert fees." Second, she argues the court erred in "refusing to apply the unpaid . . . but agreed upon monthly conservatorship fees as an offset against those monies which the court ordered [her] to reimburse."

¶23     In cases regarding guardianship and conservatorship of incapacitated adults, "[m]atters of statutory construction are questions of law that are reviewed for correctness." *In re Vann*, 2005 UT App 513, ¶ 8, 128 P.3d 70 (quotation simplified). "Questions of fact are reviewed under the clearly erroneous standard, with deference given to the [district] court." *Id.* (quotation simplified). And the district court's "application of the law to the facts is reviewed for abuse of discretion." *Id.* (quotation simplified).


ANALYSIS

I. Expert and Attorney Fees

¶24     Stilson argues that the district court erred in denying her request for attorney and expert fees. Specifically, she asserts the Utah Probate Code requires reimbursement of her costs and expenses for retaining professionals to assist her as Jacobson's guardian and conservator. As explained below, we reject Stilson's arguments.

¶25     In Utah, a conservator, "*acting reasonably* in efforts to accomplish the purpose for which the conservator was appointed, may use the funds of the estate . . . [to] prosecute or defend actions, claims, or proceedings . . . for the protection of

estate assets and of the conservator in the performance of the conservator's duties." Utah Code Ann. § 75-5-424(4)(x) (LexisNexis Supp. 2018) (emphasis added). And a conservator may "employ persons, including attorneys . . . or agents . . . to advise or assist in the performance of administrative duties." *Id.* § 75-5-424(4)(w)(i). To ensure that guardians and conservators fulfill their duties to the protected person, however, the Probate Code requires them to provide accountings to be "examined and approved by the court." *Id.* § 75-5-417(2) (providing the accounting duties of conservators); *see also id.* § 75-5-312(v)(A)–(E) (providing the accounting duties of guardians). Given these provisions, we agree with Stilson that she was authorized to use estate funds for *reasonable* efforts to accomplish the purpose for which she was appointed. *See id.* § 75-5-424(4).

¶26    The district court denied Stilson's request for two types of costs and expenses: (1) fees for Dr. D's medical evaluation of Jacobson, and (2) attorney and expert fees that Stilson incurred in opposing Jacobson's petition to terminate the guardianship and conservatorship. We discuss each in turn.

A.    Dr. D's Fees

¶27    Stilson argues that the district court erred in determining Dr. D's medical examination fees were "unreasonable." We disagree.

¶28    "Reasonable" means "[f]air, proper, or moderate under the circumstances." *Reasonable*, Black's Law Dictionary (9th ed. 2009). Whether a person acted reasonably under a specific set of circumstances generally is a question of fact. *See, e.g., Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1279 (Utah 1998) ("[T]he finder of fact must determine whether, given the particular circumstances, a reasonable person would have researched the property's title record."); *Andreini v. Hultgren*, 860 P.2d 916, 919 (Utah 1993) ("The point at which a person reasonably should know that he or she has suffered a legal injury is a question of fact."); *Estate of Keenan v. Colorado*

*State Bank & Trust*, 252 P.3d 539, 546–47 (Colo. App. 2011) (determining that whether a conservator acted reasonably in opposing a protected person's motion to terminate the conservatorship—and is therefore entitled to reimbursement for fees—is a question of fact).

¶29    "Questions of fact are reviewed under the clearly erroneous standard, with deference given to the [district] court." *In re Vann*, 2005 UT App 513, ¶ 8, 128 P.3d 70 (quotation simplified). Under that standard, we will disturb the district court's finding only if it "is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 12, 427 P.3d 571 (quotation simplified); *see also Conservatorship of Lefkowitz*, 58 Cal. Rptr. 2d 299, 302 (Ct. App. 1996) (overturning a decision that a conservator acted reasonably and in good faith in unsuccessfully opposing a petition to remove the conservatorship—and was therefore entitled to compensation–when there was "no substantial evidence in the record" to support that decision).

¶30    Here, after Dr. E evaluated Jacobson, he recommended that Stilson arrange an independent neuropsychological evaluation. The court determined that retaining Dr. D to perform this evaluation was unreasonable because he is not a neuropsychologist and, given his previous dealings with Stilson and her attorney, was not an independent evaluator. Stilson does not contest these findings, and we note that the evidence supports them.

¶31    Given those facts, we cannot say the court erred in determining that retaining Dr. D to evaluate Jacobson was unreasonable. Indeed, hiring a doctor who does not possess the qualifications necessary to provide a reliable, objective opinion as to a protected person's abilities does not seem "fair and proper under the circumstances." *Reasonable*, Black's Law Dictionary (9th ed. 2009). Thus, because Stilson was entitled to

use estate funds for only *reasonable* efforts to accomplish the purpose for which she was appointed, *see* Utah Code Ann. § 75-5-424(4)(x), we affirm the district court's decision to deny Stilson's request for Dr. D's examination fees.

B.     Expenses for Challenging Jacobson's Petition

¶32     Stilson argues that the district court erred in denying her request for attorney and expert fees incurred in challenging Jacobson's petition to terminate the guardianship and conservatorship. We disagree.

¶33     She first asserts it was improper to treat her "as only an interested person," citing Utah Code sections 75-5-307 and 75-5-415. These provisions establish that, before accepting the resignation of a guardian or conservator, courts must hold a hearing to determine whether the guardianship or conservatorship should be terminated and whether the court should appoint a replacement guardian or conservator. *See* Utah Code Ann. §§ 75-5-307(3), 75-5-415(2) (LexisNexis Supp. 2018). Pending the outcome of such a hearing, the resigning guardian or conservator generally will not be removed. *See id.*

¶34     We take no issue with Stilson's assertions in this regard. But the district court denied her request for expenses because it determined that Stilson was not acting *in her capacity as conservator* when she continued to seek a replacement guardian and conservator. The court supported this conclusion by finding that, at the time Stilson submitted her resignation, her counsel "represented to the court that she desired to proceed as an interested person." Notably, Stilson does not challenge this finding. Instead, she seems to argue that, as a matter of law, a guardian or conservator cannot participate in a proceeding regarding the protected person in any capacity other than guardian or conservator. We are not persuaded.

¶35     The relevant provisions of the Probate Code support a broad interpretation of the term "interested person." For

example, Utah Code section 75-5-303 allows "any person interested in the incapacitated person's welfare . . . [to] petition for . . . appointment of a guardian." Utah Code Ann. § 75-5-303(1). And section 75-5-404 establishes that "any person who is interested in [another's] estate, affairs, or welfare, including his parent, *guardian*, or custodian, or any person who would be adversely affected by lack of effective management of his property and affairs may petition for the appointment of a conservator or for other appropriate protective order." *Id.* § 75-5-404(1) (Michie 1993) (emphasis added).

¶36 Stilson provides no authority to support her assertion that a guardian or conservator cannot choose to proceed as an interested person in pursuing a petition to appoint a replacement guardian or conservator over the protected person. And considering the broad language in sections 75-5-303 and 75-5-404, we conclude that Stilson was entitled to proceed solely as an interested person—as opposed to as Jacobson's guardian and conservator. *See R.P. v. K.S.W.*, 2014 UT App 38, ¶ 15, 320 P.3d 1084 (explaining that this court "look[s] to the plain language of the statute" to determine "the legislature's intent and purpose" (quotation simplified)).

¶37 Stilson claims the district court "made clear throughout the proceedings that [she] was the guardian/conservator of [Jacobson]." As discussed above, there is no dispute that Stilson was Jacobson's guardian and conservator until the district court issued its order removing her from those positions. And because Stilson does not contest that her attorney told the court she was electing to continue solely as an interested person, we cannot say the court erred in determining she was acting in that capacity.

¶38 An interested person who petitions the court to appoint a guardian or conservator is entitled to attorney fees and court costs only if the petition is successful. *See* Utah Code Ann. §§ 75-5-414, 75-5-303(2)(d) (LexisNexis Supp. 2018). We therefore affirm the district court's decision to deny Stilson's request for

expenses incurred in opposing Jacobson's petition to terminate the guardianship and conservatorship on the ground that Stilson was not acting in her capacity as guardian or conservator.

¶39 The district court's decision not to award Stilson her attorney fees and costs incurred in challenging Jacobson's petition to terminate the guardianship and conservatorship can be affirmed on an alternative ground: even if Stilson was acting in her capacity as guardian or conservator in mounting that challenge, the district court found that Stilson's efforts were unreasonable, and that finding is not clearly erroneous.

¶40 As previously discussed, *see supra* Part I.A., whether a person acted reasonably under a particular set of circumstances is a question of fact. *See, e.g.*, *Aurora Credit Servs., Inc. v. Liberty West Dev., Inc.*, 970 P.2d 1273, 1279 (Utah 1998). We will not disturb the district court's finding unless it "is against the clear weight of the evidence, or if we otherwise reach a firm conviction that a mistake has been made." *Grimm v. DxNA LLC*, 2018 UT App 115, ¶ 12, 427 P.3d 571 (quotation simplified).

¶41 After reviewing the record and the parties' arguments, we conclude the court's finding is not against the clear weight of the evidence. In early 2017, Dr. E told Stilson that Jacobson "had the ability to care for himself and his children and manage his own financial affairs." The district court found Dr. E's testimony "accurate and credible," in part, because he "did not rely on [Stilson's] assertions" in reaching his opinion. On appeal, we grant deference to the district court's assessment of credibility. *Henshaw v. Henshaw*, 2012 UT App 56, ¶ 11, 271 P.3d 837. The evidence therefore supports the court's finding that Stilson "had information from Dr. E . . . to indicate that [Jacobson] was fully capable of managing his own affairs." Yet she continued to litigate Jacobson's incapacity and request a replacement guardian and conservator.

¶42 Further, the court found that Stilson "over-exaggerate[d] [Jacobson's] limitations to his treating physicians, thus causing

them to form unreliable opinions as to his capabilities." The evidence also supports this finding. Notably, Stilson does not contest that, when Dr. D and Dr. L "were asked about [Jacobson's] abilities absent [Stilson's] assertions, [they] admitted that they would consider [Jacobson] capable of managing his own affairs without the need for a guardian or conservator."

¶43 We also note the court's finding—which Stilson does not contest—that Dr. D had previously diagnosed Stilson with "somatic symptom disorder" and "separation anxiety disorder." As the court said in its ruling, "somatic symptom disorder . . . is characterized by complaints of physical illness that either go beyond the scope of what would be typical for a person with the same illness or that the person uses to control or manipulate other people," and "separation anxiety disorder . . . is a persistent and excessive worry about losing major attachment figures." These findings support the court's determination that Stilson's opposition to Jacobson's petition was motivated by concerns that were "unwarranted," "meritless," and "not based on any facts presented to the court."

¶44 Stilson argues that, because she was "only interested in [Jacobson's] well-being," denying her request for fees "unfairly punishes [her] for trying to protect her brother and his estate." We make no conclusion regarding Stilson's intentions, but we note that the district court found she acted in bad faith. Regardless of Stilson's subjective intent, however, conservators may use the funds of the protected person's estate only to the extent that their actions are *reasonable*. *See* Utah Code Ann. § 75-5-424(4) (LexisNexis Supp. 2018). And even if actions are made in "good faith," they may nonetheless be objectively unreasonable. *See Conservatorship of Lefkowitz*, 58 Cal. Rptr. 2d 299, 302 (Ct. App. 1996) (determining that "a conservator is entitled to compensation for . . . opposing a petition for his or her removal as conservator only if" the opposition is in "good-faith" *and* "objectively reasonable").

¶45 In sum, we affirm—on both grounds upon which the court ruled—the district court's decision to deny Stilson's request for attorney and expert fees incurred in challenging Jacobson's petition to terminate his guardianship and conservatorship.[1]

## II. Stilson's Waived Compensation

¶46 Stilson argues that the court erred in "refusing to apply the unpaid . . . but agreed upon monthly conservatorship fees as an offset against those monies which the court ordered [her] to reimburse." She supports this argument with Utah Code section 75-5-414, which provides: "If not otherwise compensated for services rendered," a conservator "appointed in a protective proceeding is entitled to reasonable compensation from the estate." Utah Code Ann. § 75-5-414 (LexisNexis Supp. 2018).

¶47 Here, Jacobson agreed to pay Stilson $1500 per month for her services. In her accounting to the district court, however, she expressly waived any such compensation that she had not yet received. Stilson concedes she made this waiver, but she argues that enforcing it "unfairly punishes" her. We disagree.

¶48 In its ruling, the court not only found that Stilson waived her agreed upon compensation, but it also found that she "provided no information to the Court regarding any work she actually performed in managing [Jacobson's] estate or his

_____

1. In a related argument, Stilson asserts that the district court erred in ordering her to reimburse Jacobson's estate. We disagree. "Any question of liability between the estate and the conservator individually may be determined in a proceeding for accounting, . . . or other appropriate proceeding or action." Utah Code Ann. § 75-5-429(4) (Michie 1993). Because Stilson used more estate funds than she was entitled to use, the court did not err in requiring her to reimburse the estate.

business during [the relevant] time period that would indicate this fee was reasonable." Stilson attempts to contest this finding by asserting that she "continued to perform her duties up to and even beyond her termination as conservator" as demonstrated by her "full accounting" to the district court. But the court considered and ruled on Stilson's accounting, awarding her reasonable costs incurred in her duties as guardian and conservator. Stilson provides nothing more than bare assertions to support her claim that she provided guardian or conservator services during the relevant period that would have entitled her to "reasonable compensation" from the estate. *See id.*

¶49    In short, we affirm the district court's refusal to credit Stilson for her previously agreed upon compensation because (1) Stilson waived it, and (2) she has failed to show that the district court erred in determining she was not otherwise entitled to it for services rendered.

CONCLUSION

¶50    We affirm the district court's ruling on Stilson's request for costs and expenses incurred while she was Jacobson's guardian and conservator.

———