2010 UT 5

Steve CLEGG, Plaintiff and Appellant,

v.

WASATCH COUNTY and Bruce
T. Jensen, Defendants and
Appellees.

No. 20070547.

Supreme Court of Utah.

Feb. 5, 2010.

Daniel F. Bertch, Kevin K. Robson, Salt Lake City, for plaintiff.

Linette B. Hutton, Salt Lake City, for defendants.

## INTRODUCTION

NEHRING, Justice:

¶ 1 Steven Clegg sued Wasatch County and Wasatch County Sheriff's Deputy Travis Jensen for injuries he sustained when Deputy Jensen's patrol car struck the rear portion of his vehicle. The district court granted Wasatch County's motion for summary judgment on the basis that the Utah Governmental Immunity Act barred Mr. Clegg's claims. Mr. Clegg appealed. We affirm in part and reverse in part.

## BACKGROUND

¶ 2 On July 16, 2002, Steven Clegg visited the Hamlet Condominiums on the outskirts of Midway, Utah. As he was leaving, Mr. Clegg came to a stop at the intersection of 750 East and SR 113 in anticipation of making a left hand turn. He then pulled forward to a position from which he could better view approaching eastbound traffic. At the same time, Deputy Jensen was driving east on SR 113. He was responding to an injury-accident in Timber Lakes, Utah. At the time his car collided with Mr. Clegg's vehicle, Deputy Jensen had activated both his siren and his emergency lights. Deputy Jensen claims that Mr. Clegg was partially blocking the eastbound lane of SR 113 and that he attempted to pass Mr. Clegg on the south shoulder of the highway because he saw oncoming traffic in the westbound lanes. Deputy Jensen's attempted pass was not successful, and his police car struck the rear portion of Mr. Clegg's vehicle.

¶ 3 Mr. Clegg sued Deputy Jensen and Wasatch County for negligence.[1] Wasatch County moved for summary judgment on the basis that the Governmental Immunity Act, which retains the immunity of governmental entities from suit for the operation of emergency vehicles, barred Mr. Clegg's claim. Mr. Clegg argued that the section of the Governmental Immunity Act that grants immunity for the operation of emergency vehicles is unconstitutional under the open courts clause of article I, section 11, and the uniform operation of laws clause found in article I, section 24 of the Utah Constitution. Mr. Clegg also asserted that operators of emergency vehicles and other personnel who respond to emergencies owe a duty of care to others on the road. In addition, Mr. Clegg

---

1. Throughout our opinion, we will use Wasatch County to collectively refer to Deputy Jensen and Wasatch County.

claimed that because Deputy Jensen had violated the Wasatch County Policy and Procedure Manual, he had breached that duty of care. Finally, Mr. Clegg argued that disputed facts remained regarding whether the audible and visual signals on the patrol car gave adequate notice of a peace officer responding to an emergency because he stated that he never heard Deputy Jensen's siren nor saw his lights until the police car was skidding towards his vehicle. The district court adopted all of Wasatch County's factual statements as true and granted summary judgment to the County.

¶ 4 On appeal, Mr. Clegg makes the following four arguments: (1) that granting summary judgment to Wasatch County on the issue of governmental immunity was improper because there are material issues of fact in dispute, in particular, whether the audible and visual signals were "adequate"; (2) that even if the audible and visual signals were adequate, the 1993 amendments to Utah Code section 41–6–14 are unconstitutional under the open courts clause and the uniform operation of laws provision of the Utah Constitution; (3) that because Wasatch County was constitutionally prohibited from obtaining complete immunity for the operation of emergency vehicles, Deputy Jensen was negligent if he was driving faster than allowed by the Wasatch County Sheriff's Department Policy Manual; and (4) that the affidavit of Mr. Bonner should not have been admitted and the affidavit of Mr. Robson should not have been stricken.

¶ 5 Wasatch County argues that the district court was correct when it granted summary judgment because the Governmental Immunity Act is constitutional and bars Mr. Clegg's claims against the County. Moreover, the County contends that neither Deputy Jensen's siren nor his visual signals were inadequate. We have jurisdiction pursuant to Utah Code section 78A–3–102(3)(j)(2008).

## STANDARD OF REVIEW

¶ 6 We review a district court's grant of summary judgment for correctness. *Oman v. Davis Sch. Dist.*, 2008 UT 70, ¶ 14, 194 P.3d 956. When reviewing the grant of summary judgment, we interpret "the facts in the light most favorable to the nonmoving party," here, Mr. Clegg. *Giusti v. Sterling Wentworth Corp.*, 2009 UT 2, ¶ 6, 201 P.3d 966.

## ANALYSIS

¶ 7 The district court granted summary judgment in favor of the defendants. In doing so, Judge Howard "adopt[ed] and incorporat[ed] the arguments set forth in Defendants' memoranda on all issues and particularly [found] there [was] no factual issue as to [Deputy Jensen's] speed to defeat summary judgment." The district court held that the Governmental Immunity Act barred Mr. Clegg's claim because the patrol car was operated in compliance with Utah Code sections 41–6–132 and 41–6–146. By granting summary judgment to the defendants, the district court held that there were no material facts in dispute and that Deputy Jensen's audible and visual signals were adequate. We hold that (1) the adequacy of the audible and visual signals is a material fact in dispute; (2) until this issue is resolved, Mr. Clegg's constitutional arguments are not ripe for our consideration; and (3) the Wasatch County Policy and Procedures Manual is relevant to the question of negligence if on remand the court determines that Wasatch County does not enjoy governmental immunity, and that the district court's rulings regarding the affidavits were not in error.

I. THE DISTRICT COURT ERRED IN HOLDING THERE WAS NO ISSUE OF MATERIAL FACT AS TO WHETHER DEPUTY JENSEN'S LIGHTS OR SIREN WERE PROPERLY AUDIBLE OR VISIBLE FROM 500 FEET UNDER NORMAL CONDITIONS, AND THUS, THE DISTRICT COURT ERRED IN DETERMINING THAT THE UTAH GOVERNMENTAL IMMUNITY ACT BARRED MR. CLEGG'S CLAIMS

¶ 8 We begin our governmental immunity analysis by analyzing whether Deputy Jensen owed a duty of care to other drivers on the road. We traditionally start with this common law duty analysis because

if we find no duty exists, no negligence action can be maintained, and a plaintiff cannot recover even if we find governmental immunity is waived. *Day v. State,* 1999 UT 46, ¶ 10, 980 P.2d 1171; *Ledfors v. Emery County Sch. Dist.,* 849 P.2d 1162, 1163–64 (Utah 1993).

 ¶ 9 We have long recognized that drivers of emergency vehicles owe a duty of reasonable care to other motorists on the road. *See Day,* 1999 UT 46, ¶ 31, 980 P.2d 1171; *Howe v. Jackson,* 18 Utah 2d 269, 421 P.2d 159, 161–62 (1966); *Jensen v. Taylor,* 2 Utah 2d 196, 271 P.2d 838, 841 (1954). In doing so, we have recognized that emergency situations sometimes necessitate actions that may be unreasonable otherwise, and thus "emergency vehicles are not bound by all traffic laws" and drivers "do not necessarily violate a duty of due care when they exceed the speed limit or do not comply with certain other safety regulations." *Day,* 1999 UT 46, ¶ 31, 980 P.2d 1171. Although we afford emergency vehicle operators some latitude in responding to an emergency, we do not absolve them of all responsibility to act reasonably and " 'any careless, arbitrary or unreasonable exercise of those privileges would be negligence.' " *Id.* ¶ 14 (quoting *Howe,* 421 P.2d at 161–62). In an effort to balance the interest of safety for all persons, "[t]he test is whether the driver of the emergency vehicle acted reasonably and with appropriate care for the safety of others in light of all the circumstances." *Id.* ¶ 32.

¶ 10 Having concluded that Deputy Jensen owed a common law duty to other motorists on the road, we now examine whether the Governmental Immunity Act nevertheless prevents Mr. Clegg from bringing his negligence claim against Wasatch County.

¶ 11 In *Ledfors,* we set forth a three part inquiry to determine whether a governmental entity is entitled to immunity. First, we ask whether the activity performed was "a governmental function and therefore immunized from suit by the general grant of immunity contained in section 63–30–3." *Lyon v. Bur-*

*ton,* 2000 UT 19, ¶ 13, 5 P.3d 616 (quoting *Ledfors,* 849 P.2d at 1164). "Second, if the activity was a governmental function," we then determine whether "some other section of the Act [has] waived that blanket immunity." *Id.* "Third, if the blanket immunity has been waived," we determine whether the Act "also contain[s] an exception to that waiver which results in a retention of immunity against the particular claim." *Id.*

¶ 12 There is no dispute that the operation of an emergency vehicle constitutes a governmental function, and is thus immunized from suit. Likewise, the parties do not dispute that Utah Code section 63–30–10 (2002)[2] waives that immunity if during such operation, injury is caused by an officer's negligent act. Thus, the only remaining issue is whether Deputy Jensen's operation of his emergency vehicle fits within an exception to the waiver of that immunity.

¶ 13 Utah Code section 63–30–10(15) contains an exception to the waiver, retaining immunity for officers so long as the emergency vehicle was "driven in accordance with the requirements of Section 41–6–14." Utah Code Ann. § 63–30–10(15). Thus, in order for Deputy Jensen and Wasatch County to qualify for governmental immunity and fit within the exception to the waiver of that immunity, Deputy Jensen must have operated his vehicle in a manner consistent with Utah Code section 41–6–14. Section 41–6–14(3) states that the privilege only applies when the operator of the vehicle, not involved in a vehicle pursuit, "sounds an audible signal under section 41–6–146, *or* uses a visual signal as defined under section 41–6–132, which is visible from in front of the vehicle." *Id.* § 41–6–14(3) (emphasis added). Section 41–6–146(d) states that authorized emergency vehicles "shall be equipped with a siren ... capable of emitting sound audible under normal conditions from a distance of not less than 500 feet." *Id.* § 41–6–146(d). Section 41–6–132 states that authorized emergency vehicles must have lights as high and wide as possible and that these lights must be visible

2. The relevant events in this case took place in 2002 and are therefore governed by the statutes in effect at that time. Since the Utah Governmental Immunity Act and many of the statutes it references have been substantively amended since 2002, we cite to the versions of the statutes in effect in 2002 unless otherwise noted.

from 500 feet under normal conditions. *See id.* § 41–6–132.

¶ 14 In sum, the adequacy of the audible and visual signals are material facts, the presence or absence of which will be central to determining whether there is governmental immunity for the actions of a particular officer in responding to an emergency. While Mr. Clegg disputes the adequacy of both the audible and visual signals, Wasatch County will be immune from suit if either signal is found to be adequate. *See id.* § 41–6–14(3). We now turn to the decision of the district court to determine if summary judgment was properly granted on this issue.

■■■ ¶ 15 The first step in reviewing a district court's grant of summary judgment is to determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Utah R. Civ. P. 56(c). As part of the inquiry, the court must apply an objective standard to determine whether a genuine issue of material fact remains. *Newman v. White Water Whirlpool,* 2008 UT 79, ¶ 11, 197 P.3d 654. The objective standard seeks to find whether reasonable jurors, properly instructed, would be able to come to only one conclusion, or if they might come to different conclusions, thereby making summary judgment inappropriate. *Id.* Whether Deputy Jensen's lights and siren were adequate is crucial in determining if Wasatch County is immune from suit.

¶ 16 Mr. Clegg concedes that Deputy Jensen had his lights and siren on when the Deputy's car hit Mr. Clegg's car. However, Mr. Clegg asserts that these signals did not provide adequate notice that a peace officer responding to an emergency was approaching because Mr. Clegg did not hear the siren or see the visual signals until Deputy Jensen was skidding towards him. Wasatch County argues that because several people saw the lights and heard the siren and because Mr. Clegg admits that the lights and siren were on, there can be no doubt as to their adequacy, and Mr. Clegg's suit is thus barred by the Governmental Immunity Act.

¶ 17 We addressed the question of visibility of a police car's lights in *Kouris v. Utah Highway Patrol,* 2003 UT 19, 70 P.3d 72. In *Kouris,* a police officer responding to an emergency hit a boy crossing the street on his bicycle. *Id.* ¶ 4. The district court found that "[a]t some point" Kouris activated his warning lights. *Id.* We held that when the lights were activated and whether they were adequate were issues of material fact. *Id.* ¶ 14.

¶ 18 Mr. Clegg relies on *Kouris* for the proposition that the immunity will only arise under Utah Code sections 63–3–10(15) and 41–6–14 if the lights were visible *to him* or the siren was audible *to him.* He argues that because he claimed he was not able to see the lights or hear the siren, a disputed issue of material fact is present foreclosing summary judgment. We disagree with Mr. Clegg's reading of *Kouris.* In *Kouris,* the central question was when the police officer activated his lights and whether, as an objective matter, they were adequate under section 41–6–14, not whether the plaintiff saw or heard them. The question, therefore, is not whether Mr. Clegg saw the lights or heard the siren, but whether the lights and siren were properly audible or visible under section 41–6–14, and thereby sections 41–6–132 and 41–6–146.

¶ 19 In this case, we must determine whether it was error for the district court to determine that a reasonable juror could not find that Deputy Jensen's lights or siren were properly activated and able to be seen and heard. Because the statute provides for immunity if either the siren was audible from 500 feet *or* the lights were visible from 500 feet, only one of these facts must be undisputed for summary judgment to be proper.

¶ 20 Deputy Jensen testified that as soon as he was contacted by the dispatcher, he turned on his overhead lights and his siren. In a witness statement, one motorist stated that Deputy Jensen's vehicle came up behind his car "with lights and siren running," and that he pulled over to let Deputy Jensen pass. A second witness stated that he was able to hear the siren. Mr. Clegg's own expert testified that, based on the testimony of the witnesses, there was no reason to

conclude that Deputy Jensen's siren was not working properly.

¶ 21 Wasatch County asserts that the audible and visual signals were on and activated exactly as required by Utah Code section 41–6–14. Mr. Clegg asserts that these signals were not adequate because he did not perceive them until it was too late to avoid a collision. He does not, however, dispute the testimony that the lights and siren were on prior to the crash or assert that as an objective matter, they were not properly audible or visible under normal conditions. Rather, he argues that there is a disputed issue of material fact because he did not see or hear Deputy Jensen's emergency signals until it was too late to avoid a crash.

¶ 22 Whether Mr. Clegg actually heard or saw Deputy Jensen's siren or lights is not material. Rather, the material fact that must be undisputed in this case for Wasatch County to be immune is that either Deputy Jensen's lights or siren were adequately visible or audible under normal conditions. If reasonable minds could not differ as to whether the siren was audible from 500 feet or whether the lights were adequately visible, summary judgment was proper. On the other hand, if reasonable minds could differ about whether the lights or siren were visible or audible from 500 feet in normal conditions, summary judgment was inappropriate.

¶ 23 Viewing the evidence in a light most favorable to Mr. Clegg, it is not clear whether the lights or siren on Deputy Jensen's car were properly audible or visible from 500 feet under normal conditions as required by Utah Code section 41–6–14 and therefore, a material question of fact is in dispute. There were at least two people who said they heard the siren, and one witness stated that he saw the lights when Deputy Jensen passed him prior to the accident. Although Mr. Clegg relies solely on his own assertion that he did not see or hear Deputy Jensen's emergency signals until Deputy Jensen was skidding toward him, none of Wasatch County's evidence details how far away the witnesses were when they saw or heard Deputy Jensen's emergency signals. In order for Wasatch County to prevail on summary judgment, it must not only be undisputed that

either Deputy Jensen's lights or siren were on, but that the signals were visible or audible from 500 feet under normal conditions. Because Wasatch County presented no evidence regarding how far the witnesses who heard or saw Deputy Jensen's emergency signals were from the patrol car, and because Mr. Clegg asserted that he did not hear or see Deputy Jensen's signals until seconds before impact, we hold that the issue of whether the lights or siren were visible or audible from 500 feet remains in dispute.

## II. MR. CLEGG'S CONSTITUTIONAL ARGUMENTS ARE NOT RIPE FOR ADJUDICATION

 ¶ 24 In addition to claiming a question of fact exists as to whether the emergency vehicle in this case was operated in compliance with section 41–6–14 of the Motor Vehicle Act, Mr. Clegg claims that the 1993 amendments to this section of the Motor Vehicle Act, along with Utah Code section 63–30–10(15) are unconstitutional under the uniform operation of laws provision in article I, section 24, and the open courts clause contained in article I, section 11 of the Utah Constitution. Relying on our decisions in *Day v. State*, 1999 UT 46, 980 P.2d 1171, and *Berry v. Beech Aircraft Corp.*, 717 P.2d 670 (Utah 1985), Mr. Clegg argues that when the legislature amended the Motor Vehicle statute in 1993 to remove the duty of care provision, they unconstitutionally abrogated a preexisting negligence cause of action, and that but for this change Mr. Clegg could have brought a negligence claim against Wasatch County. Furthermore, Mr. Clegg claims that the 1993 amendments are also unconstitutional under the uniform operation of laws provision because they impermissibly treat the class of persons injured by emergency vehicles in pursuit differently than the class of persons injured by the negligent operation of an emergency vehicle in other circumstances.

¶ 25 Wasatch County argues that the test articulated in *Standiford v. Salt Lake City Corp.*, 605 P.2d 1230 (Utah 1980), is the appropriate test to apply, and since operating an emergency vehicle constitutes a "governmental function" under *Standiford*, there is

no open courts clause violation. Furthermore, Wasatch County contends that the statute is constitutional under the uniform operation of laws provision because the statute is subject to rational basis review and has a rational relationship to the legitimate interest of promoting public safety by allowing police officers to quickly respond to emergency situations.

¶ 26 We decline to reach these constitutional questions because we conclude they are not ripe for adjudication. We have previously stated that where a controversy "has not yet sharpened into an actual or imminent clash of legal rights and obligations between the parties," or "[w]here there exists no more than a difference of opinion regarding the hypothetical application of a piece of legislation to a situation in which the parties might, at some future time, find themselves, the question is unripe for adjudication." *State v. Ortiz*, 1999 UT 84, ¶ 3, 987 P.2d 39 (quoting *State v. Herrera*, 895 P.2d 359, 371 (Utah 1995)). Indeed, where "any direction we may provide ... may ultimately prove to be irrelevant," *Pett v. Autoliv ASP Inc.*, 2005 UT 2, ¶ 5, 106 P.3d 705, or where there are "possible circumstances under which we would not need to address the constitutionality of [a statute]," to do so would be to impermissibly render an advisory opinion. *Ortiz*, 1999 UT 84, ¶ 4, 987 P.2d 39.

¶ 27 We conclude that before we can address the constitutionality of the 1993 amendments to the Motor Vehicle Act and the Utah Governmental Immunity Act, an issue of fact-whether at the time his vehicle collided with Mr. Clegg's vehicle, Deputy Jensen was complying with Utah Code section 41–6–14–must first be resolved. Although, as in *Ortiz*, it is possible that "at some future time," Mr. Clegg may find himself in a position to claim the 1993 amendments are non-uniform and have unconstitutionally abrogated his cause of action, that time only arises when and if a finder of fact determines that Deputy Jensen's siren was audible or his lights were visible from 500 feet, a finding that would compel the conclusion that the current language of the Act prevents Mr. Clegg from pursuing his claims against Wasatch County. Because no finding has been made on this question, Mr. Clegg's constitutional argument is not ripe for us to consider. We therefore remand to the district court to resolve this question of fact, and decline to prematurely reach Mr. Clegg's constitutional challenges.

III. THE WASATCH COUNTY POLICY AND PROCEDURES MANUAL IS RELEVANT TO THE QUESTION OF NEGLIGENCE IF ON REMAND THE COURT DETERMINES THAT WASATCH COUNTY DOES NOT ENJOY GOVERNMENTAL IMMUNITY, AND THE DISTRICT COURT'S RULINGS REGARDING THE AFFIDAVITS WERE NOT IN ERROR

¶ 28 Finally, Mr. Clegg argues that Deputy Jensen's possible violation of the Wasatch County Policy and Procedures Manual has bearing on whether Deputy Jensen's negligence was the cause of his collision with Mr. Clegg. Wasatch County argues that the Policy Manual does not apply because it is not a statute, ordinance, or a municipal policy. Affidavits were submitted regarding the applicability of the Policy Manual, one from Chief Deputy Todd Bonner of the Wasatch County Sheriff's Office and one from Mr. Clegg's counsel, Kevin Robson. Mr. Clegg moved to strike the affidavit of Mr. Bonner, and Wasatch County moved to strike the affidavit of Mr. Robson. Wasatch County opposed Mr. Clegg's motion to strike, and it was denied. Mr. Clegg did not oppose Wasatch County's motion to strike, and it was granted.

¶ 29 Because the Governmental Immunity Act grants immunity to Wasatch County for negligence of its officers in responding to emergencies so long as either their emergency lights or siren are visible or audible from 500 feet in normal conditions, the Policy Manual will only have bearing on the question of Deputy Jensen's negligence if on remand the district court finds that neither Deputy Jensen's lights or siren were audible or visible from 500 feet and Wasatch County is not immune from suit. If that is the case, violation of the Policy Manual will be relevant to the question of negligence, but will not necessarily be determinative. *See Rol-*

*lins v. Petersen*, 813 P.2d 1156, 1163 (Utah 1991).

¶ 30 Following a request by the district court for supplemental briefing regarding the applicability of the Policy Manual to this case, Mr. Clegg submitted his Supplemental Memorandum of Points and Authorities Opposing Summary Judgment; Wasatch County submitted its Response to Plaintiff's Supplemental Memorandum, which included the affidavit of Mr. Bonner; and Mr. Clegg submitted a Reply Memorandum Regarding Applicability of Sheriff's Manual. Before submitting his Reply Memorandum, Mr. Clegg moved to strike Mr. Bonner's affidavit. The district court denied Mr. Clegg's motion to strike.

¶ 31 Mr. Clegg urges us to reverse the decision of the district court, arguing that the affidavit of Mr. Bonner violated Utah Rules of Civil Procedure 7(c) and 56(e). Mr. Clegg argues that when all the subsections of rule 7(c) are read together, they stand for the proposition that all materials supporting a party's motion for summary judgment, including affidavits, must be filed with the original motion. We disagree. A party is allowed to file a reply memorandum to rebut matters raised in the memorandum in opposition. Utah R. Civ. P. 7(c)(1). In rebutting those matters, "[a] party may attach as exhibits to a memorandum relevant portions of documents cited in the memorandum, such as affidavits or discovery materials." Utah R. Civ. P. 7(c)(3)(D). Clearly, under the rule, supporting affidavits to reply memoranda are allowed, and the inclusion of Mr. Bonner's affidavit did not violate the rule.

¶ 32 In this case, the district court called for supplemental briefing on the question of whether the Policy Manual applied. It directed Mr. Clegg to file supplemental briefing within fourteen days of the order and directed Wasatch County to file responsive supplemental briefing within fourteen days of Mr. Clegg's filing. Mr. Clegg's supplemental brief raised the issue of whether the area where the accident occurred was a "populated" area as defined by the Policy Manual. Whether Wasatch County's supplemental brief containing the affidavit of Mr. Bonner is considered as a supplement to its previous reply brief, or as a memorandum in opposition to Mr. Clegg's supplemental brief, the rule allows Wasatch County to rebut matters raised in Mr. Clegg's briefing using an attached affidavit.

¶ 33 In addition to arguing that the affidavit was not allowed under rule 7, Mr. Clegg argues that Mr. Bonner's statements in the affidavit violated Utah Rule of Civil Procedure 56(e). Rule 56(e) states that affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Mr. Clegg's only argument for why Mr. Bonner's affidavit violated rule 56(e) is that it "merely makes inadmissible 'arguments' rather than stating specific facts." After making statements regarding his qualifications, and providing background on the Policy Manual, Mr. Bonner makes the following averments in his affidavit:

4. The term "populated area" is intended to describe a residential area, or a[sic] area heavily trafficked by both vehicles and pedestrians. We refer to a populated area as "city-like," or an area with the look and feel of a busy residential neighborhood or city center.

5. The highway between Midway and Heber City, designated as SR 113, particularly in the vicinity of 750 East, is not the type of area considered "populated" for application of the speed restriction set forth in § 3–3–01.05(1). However, the deputy is trained to drive at a speed that is reasonable and prudent considering the existing conditions.

¶ 34 We agree with the district court that these statements were statements of fact. Speaking in his official capacity as Deputy Jensen's supervisor, Mr. Bonner made factual statements regarding how the Sheriff's Office interprets its own Policy Manual.

¶ 35 Mr. Clegg also seeks a reversal of the district court's grant of Wasatch County's motion to strike the affidavit of Mr. Robson. " '[T]o preserve an issue for appellate review, a party must first raise the issue in the trial court,' because 'a trial court must be offered

an opportunity to rule on an issue.' " *O'Dea v. Olea,* 2009 UT 46, · ¶ 18, 217 P.3d 704 (quoting *Badger v. Brooklyn Canal Co.,* 966 P.2d 844, 847 (Utah 1998) (alteration in original)). We decline to address Mr. Clegg's argument for reversing the district court on this point because Mr. Clegg failed to oppose Wasatch County's motion to strike in the district court.

## CONCLUSION

¶ 36 While recognizing that law enforcement officers need to react quickly in response to emergencies, we find that in doing so they must exercise a duty of reasonable care under all the circumstances. Although we find a common law duty to act reasonably under all the circumstances, we also find that even if Deputy Jensen failed to do so, Wasatch County may still be immune from suit if it is able to show that Deputy Jensen's lights or siren were properly visible or audible from 500 feet. Because there is no evidence in the record regarding the distance from which the signals could be seen or heard, we hold that a disputed issue of material fact remains as to the question of distance. Should the district court find on remand that Wasatch County is not immune from suit because Deputy Jensen failed to properly activate his lights or siren as required by the Act, the Wasatch County Policy and Procedures Manual could be relevant to Mr. Clegg's negligence cause of action, but will not necessarily be determinative. Finally, we affirm the district court's denial of Mr. Clegg's motion to strike the affidavit of Mr. Bonner and its grant of Wasatch County's motion to strike the affidavit of Mr. Robson.

¶ 37 Chief Justice DURHAM, Associate Chief Justice DURRANT, Justice WILKINS, and Justice PARRISH concur in Justice NEHRING's opinion.