2010 UT App 339

**In the matter of the GUARDIANSHIP OF E.F., G.F., and D.F., incapacitated persons.**

**Nancy Falke, Appellant,**

v.

**State of Utah, Appellee.**

**No. 20090343–CA.**

Court of Appeals of Utah.

Dec. 2, 2010.

---

Theodore R. Weckel, Salt Lake City, for Appellant Mark L. Shurtleff and Brent A. Burnett, Salt Lake City, for Appellee State of Utah.

David P. Billings, Michael A. Zody, and Joanna B. Sagers, Salt Lake City, for Appellees E.F., G.F., and D.F.

Before Judges DAVIS, THORNE, and ROTH.

## OPINION

DAVIS, Presiding Judge:

¶ 1 Nancy Falke appeals the district court's order awarding the Office of Public Guardian (the OPG) permanent custody and guardianship of her three adopted adult sons, E.F., G.F., and D.F. (the Sons). We affirm.

## BACKGROUND

¶ 2 The Sons have a range of severe physical and mental disabilities including, but not limited to, moderate to profound mental retardation, hearing loss, visual impairment, joint contractures, and epilepsy. One of the Sons requires the use of a wheelchair. Moreover, although the Sons range in age from late twenties to early forties, they function at the level of one- to two-year-old children, are very active, and have various behavioral issues. As a result, the Sons require twenty-four-hour supervision, individualized care plans, and assistance with even the most basic hygiene.

¶ 3 Ms. Falke, who is in her late seventies, is the Sons' adoptive mother.[1] Until their removal in 2008, the Sons lived with Ms. Falke in her home. Ms. Falke has experienced numerous health problems over the past several years, many of which have required her to be hospitalized. These hospitalizations have included surgeries for cancer, removal of a kidney, and removal of bowel obstructions. Ms. Falke currently wears a colostomy bag.

¶ 4 In February 2008, the OPG received a referral from an employee of the Division of Services for People with Disabilities, Utah Department of Human Services, asking the

---

1.  Ms. Falke adopted E.F. when she was sixty years old.

OPG to investigate the Sons' living conditions and safety. In March 2008, representatives from the OPG made an announced visit to the Falke home. Ms. Falke was not home, however, because she was in the hospital. During this visit, the OPG representatives observed that the Falke home was extremely unsanitary and dangerous. They found, among other things, clutter, urine-stained sheets on the Sons' beds, animal feces in the living room, rotting food and open prescription bottles in the kitchen, and bugs and spiders throughout the home. The OPG representatives also observed gates on the Sons' bedroom doors. As a direct result of these discoveries, the representatives concluded that the Falke home was an unsuitable living environment for the Sons and filed an emergency petition seeking temporary limited guardianship of the Sons. The district court granted the petition. In its capacity as the Sons' temporary guardian, the OPG then removed the Sons from the Falke home and placed them in group homes that could provide the services they required. Since their removal from the Falke home and placement in these group homes, the Sons have shown considerable improvement—physically, behaviorally, and emotionally.

¶ 5 On December 18, 2008, the OPG petitioned the district court to be appointed the Sons' permanent limited guardian. On December 19, 2008, Ms. Falke also petitioned the district court to be appointed the Sons' permanent guardian. After an evidentiary hearing on the petitions, the district court appointed the OPG as the Sons' permanent limited guardian. Ms. Falke now appeals this decision.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Ms. Falke raises two points of error in the district court's decision. First, she contends that the trial court erred because it failed to recognize that, as the Sons' adoptive mother, she had a statutory priority to guardianship, *see* Utah Code Ann. § 75-5-311 (Supp.2010). " 'Matters of statutory construction are questions of law that are reviewed for correctness.' " *Office of Pub. Guardian v. Vann (In re Vann)*, 2005 UT App 513, ¶ 8, 128 P.3d 70 (quoting *Platts v. Parents Helping Parents*, 947 P.2d 658, 661 (Utah 1997)).

¶ 7 Second, Ms. Falke argues that there was insufficient evidence to support the district court's finding of incompetence and that the district court abused its discretion in concluding that she was not qualified to serve as the Sons' permanent guardian. "This court will overturn a [lower] court's factual findings ... only if the findings are clearly erroneous." *In re T.M.*, 2006 UT App 435, ¶ 14, 147 P.3d 529; *see also Vann*, 2005 UT App 513, ¶ 8, 128 P.3d 70 (" 'Questions of fact are reviewed under the clearly erroneous standard, with deference given to the trial court.' " (quoting *Platts*, 947 P.2d at 661)). "The trial court's application of law to the facts is reviewed for abuse of discretion." *Platts*, 947 P.2d at 661.

## ANALYSIS

I. The Parental Preference Found in Utah Code Section 75-5-311(4) Does Not Apply.

■ ¶ 8 Ms. Falke contends that as the Sons' adoptive mother, she is entitled to a statutory priority of guardianship appointment pursuant to Utah Code section 75-5-311(4), *see* Utah Code Ann. § 75-5-311(4).[2] Specifically, Ms. Falke argues that because the Sons "were unmarried, had no children

---

2. As a corollary to this argument, Ms. Falke urges this court "to define the standard of proof required to overcome the parental priority" and claims that the appropriate standard should be "beyond a reasonable doubt." However, Ms. Falke did not raise this issue below and, accordingly, it is not preserved for appeal. *See Clegg v. Wasatch Cnty.*, 2010 UT 5, ¶ 35, 227 P.3d 1243 ("[T]o preserve an issue for appellate review, a party must first raise the issue in the trial court, because a trial court must be offered an opportunity to rule on an issue." (alteration in original) (internal quotation marks omitted)). Moreover, Ms. Falke does not argue that either plain error or exceptional circumstances warrant our consideration of this issue for the first time on appeal. Thus, we do not address it further. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 34, 212 P.3d 535 ("[Appellate courts do] not address arguments brought for the first time on appeal unless the [district court] committed plain error or exceptional circumstances exist." (second alteration in original) (internal quotation marks omitted)).

and had no nominees for guardianship," she "had an uncontested [statutory] priority to be their legal guardian." *See generally id.* § 75–5–311(4)(a)–(c) (providing that nominees, spouses, and children enjoy a higher priority than do parents). Moreover, Ms. Falke claims, "[T]he only basis for [her] not being able to serve as [the Sons'] guardian is if the [d]istrict [c]ourt found her to be incompetent." Ms. Falke's argument is misplaced because she misconstrues the statute.

¶ 9 The relevant portions of Utah Code section 75–5–311 provide as follows:

> (2) Any competent person[3] or suitable institution may be appointed guardian of an incapacitated person.
>
> . . .
>
> (4) . . . [P]ersons who are not disqualified have priority for appointment as guardian in the following order:
>
> . . .
>
> (d) a parent of the incapacitated person[.]

*Id.* § 75–5–311(2), (4)(d). While it is true that section 75–5–311(4) provides for priority of appointment to certain individuals, those priorities apply only if the person is not otherwise disqualified, *see id.* § 75–5–311(4). As discussed in more detail below, in this case the district court correctly concluded that Ms. Falke was not qualified to serve as the Sons' legal guardian. Accordingly, the statutory priorities listed in section 75–5–311(4) do not even apply to Ms. Falke, much less control the outcome of the case.[4] Therefore, Ms. Falke's claim in this regard fails.

II. The District Court's Factual Findings, Which We Accept as True, Support its Ultimate Legal Conclusion that Ms. Falke Was Not Qualified to Serve as the Sons' Guardian.

¶ 10 Ms. Falke argues that there is insufficient evidence to support several of the district court's factual findings and that "the [d]istrict [c]ourt seriously erred in its . . . application of [the] material facts [to the law]." For the following reasons, we conclude that Ms. Falke's claims are without merit.

¶ 11 First, inasmuch as Ms. Falke's brief purports to challenge the district court's factual findings, she has failed to marshal the evidence in support of those findings and then demonstrate that the evidence is legally insufficient. Indeed,

> [i]t is [Ms. Falke's] responsibility to marshal the evidence to demonstrate that the factual findings made by the [district] court were erroneous. Specifically, our marshaling rule requires [Ms. Falke] to marshal all the evidence in favor of the facts as found by the [district] court and then demonstrate that even viewing the evidence in a light most favorable to the court below, the evidence is insufficient to support the findings of fact.

*See Save Our Schs. v. Board of Educ.,* 2005 UT 55, ¶ 10, 122 P.3d 611 (citation and internal quotation marks omitted); *see also West Valley City v. Majestic Inv. Co.,* 818 P.2d 1311, 1315 (Utah Ct.App.1991). Here, Ms. Falke's brief largely ignores the evidence upon which the district court relied; instead, she simply restates the evidence that supports her claim and then urges this court to

---

**3.** Ms. Falke's brief repeatedly emphasizes that, regardless of her physical limitations, she was "mentally" competent to act as the Sons' guardian. We note, however, that section 75–5–311(2) does not require that the potential guardian only be *mentally* competent. Rather, that section states broadly that "[a]ny *competent* person . . . may be appointed guardian of an incapacitated person." Utah Code Ann. § 75–5–311(2) (Supp. 2010). Accordingly, we read the statute to require not just mental competence, but competence generally, which is defined as "having requisite or adequate ability or qualities." *Webster's New Collegiate Dictionary* 268 (9th ed.1986).

**4.** Ms. Falke claims that the failure to recognize this parental priority rises to the level of a due process violation. However, Ms. Falke did not raise this constitutional claim below and, therefore, it is not preserved for appeal. *See Clegg,* 2010 UT 5, ¶ 35, 227 P.3d 1243. Moreover, Ms. Falke does not argue until her reply brief that exceptional circumstances warrant consideration of the issue for the first time on appeal. Accordingly, we do not address the issue further. *See Jacob,* 2009 UT 37, ¶ 34, 212 P.3d 535; *see also State v. Weaver,* 2005 UT 49, ¶ 19, 122 P.3d 566 ("[W]e will not consider matters raised for the first time in the reply brief." (internal quotation marks omitted)).

view that evidence in her favor. Because Ms. Falke has failed in her duty to marshal the evidence, we assume that the evidence supports the district court's findings of fact. *See Burton Lumber & Hardware Co. v. Graham,* 2008 UT App 207, ¶ 13, 186 P.3d 1012 ("[B]ecause [the appellant] makes no real attempt to properly marshal the evidence, we accept all the trial court's findings.").

¶ 12 Second, accepting the district court's factual findings as true, we conclude that the findings support the district court's legal conclusion that Ms. Falke was disqualified from serving as the Sons' legal guardian. Although Ms. Falke's concern for the Sons is undisputed, the Sons have profound physical and mental disabilities that require intensive individualized care and twenty-four-hour-a-day supervision from trained professionals. However, prior to the Sons' removal from the Falke home, their care was primarily provided by a combination of Ms. Falke and others, including teenagers and friends, who had no formalized training in caring for individuals with special needs. Additionally, Ms. Falke has numerous health issues, many of which are serious and have required her to be hospitalized and out of the home. Moreover, the living conditions in the Falke home were dangerous and unsanitary. Finally, the Sons have shown considerable improvement in all aspects of their lives since their removal from the Falke home.

¶ 13 In light of these findings, as well as the fact that the district court has considerable discretion in determining whether an individual is qualified to serve as guardian, we cannot say that the district court abused its discretion in concluding, "[Ms.] Falke has not met and cannot meet the requirements to be a fit and appropriate guardian. Therefore, she is disqualified under the Utah Probate Code."

## CONCLUSION

¶ 14 The statutory priorities of appointment listed in Utah Code section 75–5–311(4) simply do not apply in this case. Furthermore, the district court's factual findings support its legal conclusion that Ms. Falke was not qualified to serve as the Sons' legal guardian. Accordingly, the district court's decision is affirmed.[5]

¶ 15 WE CONCUR: WILLIAM A. THORNE JR., Judge and STEPHEN L. ROTH, Judge.

---

5.  Ms. Falke raises other issues in her brief, and we have reviewed and determined them to be without merit. *See generally Carter v. Galetka,* 2001 UT 96, ¶ 5, 44 P.3d 626 ("[T]he [appellate] court need not analyze and address in writing each and every argument, issue, or claim raised." (internal quotation marks omitted)).