2014 UT App 6

**Paul VELASQUEZ, Edward Callison, Carole Callison, Teagan Marie Clark, Aspen Clark, and Jeremy Wright, Plaintiffs and Appellees,**

v.

**HARMAN–MONT & THEDA, INC., Defendant and Appellant.**

**No. 20120858–CA.**

Court of Appeals of Utah.

Jan. 9, 2014.

---

David L. Bird, Bruce J. Boehm, and Nickolas S. Rice, Salt Lake City, Attorneys for Appellant.

Karra J. Porter, Kristen C. Kiburtz, Jeffrey D. Eisenberg, and Jordan P. Kendell, Salt Lake City, Edward T. Wells, Murray, Attorneys for Appellee, Paul Velasquez.

J. Jordan Christianson, Salt Lake City, and Michael C. Mathie, Attorneys for Appellees Edward Callison, Carole Callison, Teagan Marie Clark, and Aspen Clark; William R. Rawlings and Travis B. Alkire, Draper, Attorneys for Appellee, Jeremy Wright.

Judge CAROLYN B. McHUGH authored this Opinion, in which Judges GREGORY K. ORME and JAMES Z. DAVIS concurred.

McHUGH, Judge:

¶ 1 Defendant Harman–Mont & Theda, Inc. (Mont & Theda) appeals from an order entered by the district court on September 25, 2012 (the Memorandum Decision). We affirm the Memorandum Decision to the extent it struck Mont & Theda's motion for summary judgment and we decline to address those portions of the Memorandum Decision that are not ripe for appellate review.

## BACKGROUND

¶ 2 Mont & Theda operated a Kentucky Fried Chicken outlet in Spanish Fork, Utah, licensed by Harman Management Corporation (Harman Management). On March 11, 2010, an employee of Mont & Theda (Employee), participated in a training session conducted by Harman Management. Other Kentucky Fried Chicken licensees' employees, including Kristine Velasquez, Donald Callison, and Jeremy Wright, also attended this training session. The session started at one location in Murray, Utah, but included off-site visits to fast-food restaurants in the area. Employee used his father's automobile to drive Velasquez, Wright, and Callison to these restaurants. During the drive from the first fast-food restaurant to the second, Employee reached a light rail crossing. Although the crossing arm was down, Employee drove around it and attempted to cross before the coming train arrived. He was unsuccessful. The resulting crash killed Employee and Callison and seriously injured Velasquez and Wright.

¶ 3 Velasquez, through her parent and guardian, Paul Velasquez, and Wright sued for personal injuries; Callison's heirs brought an action for wrongful death (collectively, Plaintiffs). The plaintiffs each filed suit, seeking damages from Mont & Theda for Employee's actions. Although Mont & Theda raised a number of affirmative defenses in its answers to the plaintiffs' complaints, it did not assert a defense based on the Travel Reduction Act, *see* Utah Code Ann. §§ 72–12–101 to –110 (LexisNexis 2009). The cases were later consolidated into the case now before us on interlocutory appeal.

¶ 4 After the close of discovery, Mont & Theda filed a motion for summary judgment raising the Travel Reduction Act as a defense for the first time.[1] Plaintiffs moved to strike Mont & Theda's motion for summary judgment because it was based on an affirmative defense that had not been pleaded and thus not properly joined and because the defense had been waived. In addition, Plaintiffs opposed the motion for summary judgment on the merits, arguing that the Travel Reduction Act was inapplicable under the present facts and, if applied to bar Plaintiffs' claims, would violate the Utah Constitution.

¶ 5 After oral argument, the district court issued the Memorandum Decision. The district court first addressed Plaintiffs' motion to strike Mont & Theda's motion for summary judgment. The district court concluded that the Travel Reduction Act defense was an affirmative defense that Mont & Theda should have pleaded in its answers. In addition, the district court determined that "what was pled did not put the plaintiffs on notice of the issues raised by [the Travel Reduction Act] defense" and that "it is unfair to allow [Mont & Theda] to raise it now, in the context of a summary judgment motion after discovery has closed." Accordingly, the

district court stated that Plaintiffs' motion to strike "should therefore be granted."

¶ 6 Next, the district court considered the possibility that Mont & Theda might attempt to remedy the failure to plead the Travel Reduction Act defense by moving to amend its answers. Although the district court expressly reserved judgment on whether such a motion would be granted, it decided to address the merits of the Travel Reduction Act defense. Ultimately, the district court indicated that the Travel Reduction Act "does not apply in the context of this case" and that "Mont & Theda's Motion for Summary Judgment is therefore denied."[2]

¶ 7 In response to the Memorandum Decision, Mont & Theda took two actions. First, it filed a motion to amend its answers to include the Travel Reduction Act defense "in order to ensure that the [Travel Reduction Act] defense is properly preserved for purposes of appeal." Second, Mont & Theda filed a petition for permission to appeal the interlocutory Memorandum Decision. Before a scheduled hearing on the motion to amend Mont & Theda's answers could be held, a law and motion panel of this court granted Mont & Theda's petition for permission to appeal. Mont & Theda then moved to stay all proceedings pending before the district court, including the hearing on the motion to amend the answers. The district court granted the motion to stay.

¶ 8 Although an initial reading of the Memorandum Decision suggested that the district court issued an appealable ruling on the applicability of the Travel Reduction Act to the facts of this case, further examination revealed ambiguities in the district court's ruling. Plaintiffs drew this issue to our attention in their motion for summary disposition, arguing that the district court's discussion of the Travel Reduction Act was an advisory

---

**1.** The Travel Reduction Act provides, in relevant part,
  (1) An employer is not liable for injuries to passengers or other persons or both resulting from the operation or use of a motor vehicle not owned, leased, or contracted for by the employer in a ride-sharing arrangement.
  (2) An employer is not liable for injuries to passengers or other persons or both on account of the employer having provided information or incentives or otherwise having en-

couraged employees to participate in ride-sharing arrangements.
Utah Code Ann. § 72–12–106 (LexisNexis 2009).

**2.** The district court also addressed several other motions for summary judgment and partial summary judgment filed by the parties. We do not address the Memorandum Decision's discussion of these other motions in this interlocutory appeal.

opinion that was not ripe for appellate review. We deferred ruling on the issues raised by Plaintiffs and Mont & Theda pending plenary presentation and consideration of the issues raised in the motion for summary disposition and in the petition for interlocutory appeal. Following briefing, we also asked the parties to be prepared at oral argument to address the question of whether the petition for interlocutory appeal had been improvidently granted. During oral argument, the parties disagreed as to the meaning of the Memorandum Decision. While Mont & Theda asserted that the district court had denied the motion to strike and denied the summary judgment motion on the merits, Plaintiffs claimed that the district court had granted the motion to strike and also held that the Travel Reduction Act defense had been waived for all purposes. After oral argument, we temporarily remanded this matter to the district court for further explanation of the Memorandum Decision.

¶ 9 On November 18, 2013, the district court issued a Clarification of Memorandum Decision Entered September 25, 2012 (the Clarification Order). The Clarification Order indicates that the district court granted Plaintiffs' motion to strike Mont & Theda's motion for summary judgment because it was based on an affirmative defense that had not been pleaded and because the defense had been waived. The district court also stated that it had not "prejudg[ed] all aspects that would be addressed in deciding a motion to amend" the answers, but decided to share its opinion that such a motion would be denied as futile or, if granted, a "Motion for Summary Judgment based upon the Travel Reduction Act would be denied on the merits for the same reasons that the Motion to Amend would be futile."

## ISSUES AND STANDARDS OF REVIEW

¶ 10 Mont & Theda seeks appellate review of the district court's statement that the Travel Reduction Act is not applicable under the facts of this case, including its reasoning

that a plain language interpretation of the Act would lead to an absurd result. In addition, the parties ask us to review whether the application of the Travel Reduction Act as a complete defense to Plaintiffs' claims is constitutional. We review questions of statutory interpretation for correctness, affording no deference to the district court. *Turner v. Staker & Parson Cos.*, 2012 UT 30, ¶ 7, 284 P.3d 600. Furthermore, we address constitutional challenges to legislation only when we are required to do so. *Gardner v. State*, 2010 UT 46, ¶ 93, 234 P.3d 1115. However, this court has no power to issue an advisory opinion on an issue that is not yet ripe for decision. *See Utah Transit Auth. v. Local 382 of the Amalgamated Transit Union*, 2012 UT 75, ¶ 24, 289 P.3d 582; *Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141.

## ANALYSIS

**I. We Affirm the District Court's Order Striking Mont & Theda's Motion for Summary Judgment Because Mont & Theda Does Not Challenge It on Appeal.**

¶ 11 Mont & Theda focuses its appeal on the applicability of the Travel Reduction Act to the facts of this case. Mont & Theda argues that, as a matter of law, it cannot be held vicariously liable for the acts of Employee because he was engaged in a "ride-sharing arrangement" as defined by the Act. *See* Utah Code Ann. § 72–12–106(1) (LexisNexis 2009).[3] However, Mont & Theda does not challenge the merits of the district court's ruling striking the motion for summary judgment, arguing instead that the motion to strike was never granted and that the district court considered the summary judgment motion and denied it on the merits. Accordingly, Mont & Theda does not effectively challenge the district court's decision on this point.

¶ 12 Because Mont & Theda first raised a defense based on the Travel Reduction Act in its motion for summary judgment,

---

**3.** Under the Act, " 'Ride-sharing arrangement' means either a carpool, van-pool, or both." Utah Code Ann. § 72–12–103(3) (LexisNexis 2009). In turn, " 'Car-pool' means a mode of transportation in which: (a) six or fewer persons, including the driver, ride together in a motor vehicle; (b) that transportation is incidental to another purpose of the driver; and (c) the vehicle manufacturer's design capacity of any one seat is not exceeded." *Id.* § 72–12–103(1).

Plaintiffs moved to strike the summary judgment motion. The district court granted the motion to strike both because the Travel Reduction Act was an affirmative defense that had not been pleaded and thus was not properly joined, and because Mont & Theda had waived the defense by not putting Plaintiffs on notice of it until after the close of discovery. Because Mont & Theda does not challenge either of these grounds, we affirm the district court's decision striking Mont & Theda's motion for summary judgment. *See Allen v. Friel,* 2008 UT 56, ¶ 7, 194 P.3d 903 ("If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision."); *Warner v. Warner,* 2013 UT App 225, ¶ 57 (summarily affirming district court decision where appellants did not address any of the bases for the decision on appeal); *cf. Salt Lake County v. Butler, Crockett & Walsh Dev. Corp.,* 2013 UT App 30, ¶ 28, 297 P.3d 38 ("This court will not reverse a ruling of the trial court that rests on independent alternative grounds where the appellant challenges only one of those grounds.").

## II. The District Court's Discussion of the Travel Reduction Act Was for Advisory Purposes Only.

¶ 13 After granting Plaintiffs' motion to strike Mont & Theda's motion for summary judgment, the district court provided guidance to the parties concerning the Travel Reduction Act. "[B]ecause the issues had been fully briefed and argued, and the [district] court had read and considered the arguments on their merits," the district court addressed the arguments raised in Mont & Theda's summary judgment motion. In light of its analysis, the district court "assume[d] that a Motion to Amend would be filed but denied as futile, and in the alternative, if it were granted, that the Motion for Summary Judgment based upon the Travel Reduction Act would be denied on the merits for the same reasons that the Motion to Amend would be futile." The district court further clarified that although it "used language of denial in addressing the Motion for Summary Judgment" in its original Memorandum Decision, it intended, rather than to deny the motion for summary judgment, to indicate "that even if a Motion to Amend were filed, it would be denied as futile." The district court also reaffirmed that it had not ruled on the issue of whether Mont & Theda would be permitted to amend its answers if it filed such a motion.

¶ 14 In their appellate brief, Plaintiffs describe the district court's analysis of the statute as "dictum" and correctly note that "the Act does not come into play unless two things happen at some later point: 1) [Mont & Theda] files a motion to amend to allow it to assert the Act, and 2) the motion is granted." Although Mont & Theda has filed a motion to amend, it later moved to stay the proceedings below, and the district court has yet to rule on the motion to amend. While the district court's analysis of the Travel Reduction Act was useful to the parties in assessing their litigation strategy, it was not necessary to the resolution of the motion to strike or the motion for summary judgment. Once the court granted the motion to strike, all issues raised by both motions were resolved. The Travel Reduction Act was not before the district court because Mont & Theda had not pleaded it as an affirmative defense. "[Mont & Theda's] assertion of [its] unpleaded claims in briefing and argument before the district court and on appeal cannot remedy the failure to include them in an appropriate pleading." *See Barton Woods Homeowners Ass'n v. Stewart,* 2012 UT App 129, ¶ 11, 278 P.3d 615; *see also Holmes Dev., LLC v. Cook,* 2002 UT 38, ¶ 31, 48 P.3d 895 ("A plaintiff cannot amend the complaint by raising novel claims or theories for recovery in a memorandum in opposition to a motion to dismiss or for summary judgment, because such amendment fails to satisfy Utah's pleading requirements." (citations omitted)). Nevertheless, the district court shared its conclusion that the Travel Reduction Act would not be applicable under the present facts, even if it had been pleaded.

¶ 15 We agree with Plaintiffs that the district court merely hypothesized what it would do in response to possible future actions of the parties that may or may not occur. As a result, these issues are not ripe for appellate review. *See Carter v. Lehi City,* 2012 UT 2, ¶ 93, 269 P.3d 141 (explaining that hypotheti-

cal statutory issues are "unripe for adjudication" (citation and internal quotation marks omitted)). The Utah Supreme Court has identified three important functions served by the ripeness doctrine: (1) "block[ing] the court from rendering advisory opinions on matters that may not impact the parties"; (2) "requiring a clear factual record prior to adjudication" and thereby "facilitat[ing] informed decisions that fit the circumstances of individual cases"; and (3) "prevent[ing] the court from intruding on legislative functions by unnecessarily ruling on sensitive constitutional questions." *Id.* (citations omitted). Here, all three of these functions are implicated.

¶ 16 First, the Travel Reduction Act defense may never be at issue. The district court stated in footnote 8 of the Memorandum Decision and reaffirmed in the Clarification Order that it was reserving judgment on whether it would allow Mont & Theda to file amended answers. Of further significance is the district court's conclusion that "it is unfair to allow [Mont & Theda] to raise [the Travel Reduction Act defense] now, in the context of a summary judgment motion after discovery has closed." Accordingly, one of the bases for the district court's decision to grant Plaintiffs' motion to strike Mont & Theda's summary judgment motion was the court's conclusion that Mont & Theda had waived the Travel Reduction Act defense. The district court might use this same reasoning—as opposed to a futility analysis—to deny Mont & Theda's motion to amend its answers to add a defense based on the Act. *See Kelly v. Hard Money Funding, Inc.,* 2004 UT App 44, ¶ 26, 87 P.3d 734 (identifying three factors to be considered in analyzing whether to grant a motion to amend: "the timeliness of the motion; the justification ... for the delay; and the resulting prejudice to the responding party" (citation and internal quotation marks omitted)). Until the district court actually rules on the applicability of the Act, any guidance from this court would be an impermissible advisory opinion.

¶ 17 Second, the factual record has not yet been clarified either by trial or by an agreement as to the undisputed facts. Indeed, the district court noted that Plaintiffs "rais[ed] factual disputes concerning whether Mont & Theda instructed the plaintiffs to visit restaurants together, and whether [Employee] offered to drive a car-pool." Third, because Plaintiffs argue that the Act violates the open courts clause, the uniform operation of laws clause, and the protection for wrongful death claims in the Utah Constitution, a decision from this court could include a premature analysis of the constitutionality of a statute that may not ultimately be at issue. As a result, any decision from this court interpreting the Travel Reduction Act defense would also constitute an impermissible advisory opinion. *See Pett v. Autoliv ASP, Inc.,* 2005 UT 2, ¶¶ 4–5, 106 P.3d 705 (concluding that merits of affirmative defense were not ripe at time of interlocutory appeal to consider whether defendant should have been allowed to amend its answer to add the defense); *Failor v. Megadyne Med. Prods., Inc.,* 2009 UT App 179, ¶¶ 25–26, 213 P.3d 899 (concluding that plaintiffs' objections to special master's report were not ripe where petition for interlocutory appeal was granted and district court had not yet ruled on the objections); *Meadow Fresh Farms, Inc. v. Utah State Univ. Dep't of Agriculture & Applied Sci.,* 813 P.2d 1216, 1220–21 (Utah Ct.App.1991) (holding that "the permissibility of refiling a case more than once is not ripe for adjudication unless and until plaintiff refiles its suit, the trial court subsequently dismisses it, and plaintiff appeals that dismissal").

¶ 18 Utah's appellate courts have repeatedly cautioned against the issuance of advisory opinions. *See, e.g., Summit Water Distrib. Co. v. Summit County,* 2005 UT 73, ¶ 50, 123 P.3d 437 ("Our settled policy is to avoid giving advisory opinions in regard to issues unnecessary to the resolution of the claims before us."); *Provo City Corp. v. Thompson,* 2004 UT 14, ¶ 22, 86 P.3d 735 ("We have observed on many occasions that this court is not inclined to issue mere advisory opinions." (citation and internal quotation marks omitted)). In *Utah Transit Authority v. Local 382 of the Amalgamated Transit Union,* 2012 UT 75, 289 P.3d 582, the Utah Supreme Court examined the constitutional limits of our judicial authority and concluded that "whatever else the judicial power clause [of

the Utah Constitution] may imply, it incorporates a prohibition on the issuance of advisory opinions by our courts." *Id.* ¶ 23. The supreme court further admonished that judges have an independent duty "to vigilantly follow the strictures of the constitution" in assessing "the scope of our own power or jurisdiction." *Id.* ¶ 26. Where the issue before the court is moot or hypothetical, we simply lack the judicial power to render a decision. *Id.* ¶ 24 & n. 12.

¶ 19 Even the interest of judicial economy provides an insufficient basis for us to review the district court's advice concerning hypothetical questions. The Utah Supreme Court rejected a similar argument in *Utah Transit Authority*, stating that the issuance of an advisory opinion "is beyond the scope of the judicial power, and we have no inherent discretion to disregard the limits of that power at the behest of parties who insist on the precedential importance or practical significance of our doing so." *Id.* ¶ 24 (footnote omitted). Indeed, our supreme court cautioned, " '[W]henever we are persuaded by reasons of expediency to engage in the business of giving legal advice, we chip away a part of the foundation of our independence and our strength.' " *Id.* ¶¶ 19 n. 4, 27 (quoting *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 103, 98 S.Ct. 2620, 57 L.Ed.2d 595 (1978) (Stevens, J., concurring in the judgment)). While it is unfortunate that the parties have incurred time and expense to pursue this interlocutory appeal in part due to our initial confusion over the Memorandum Decision, we are unable to create judicial power where it does not exist. *See id.* ¶ 23.

¶ 20 This interlocutory appeal comes to us in much the same posture as an issue the Utah Supreme Court refused to consider in *Jeffs ex rel. B.R. v. West*, 2012 UT 11, 275 P.3d 228. There, the court explained, "The district court refused to reach this issue, yet hypothesized what it would do 'if [it] were to reach that alternative motion.' We decline to

offer an advisory opinion on the district court's hypothetical ruling." *Id.* ¶ 4 n. 1 (alteration in original). We take the same approach here. Because there is no justiciable controversy before us regarding the Travel Reduction Act, we have no authority to render a ruling on it. *See Utah Transit Auth.*, 2012 UT 75, ¶ 24 n. 12, 289 P.3d 582 (defining a justiciable controversy as " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts' " (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937))); *see also In re R.B.F.S.*, 2012 UT App 132, ¶ 9, 278 P.3d 143 ("However, we do not give advisory opinions; an issue must be ripe before we will consider it on appeal." (citing *Carter v. Lehi City*, 2012 UT 2, ¶ 93, 269 P.3d 141)). Accordingly, this issue is not ripe for our consideration at this time.

¶ 21 Furthermore, although we have authority to provide guidance to the district court on remand, *see* Utah R.App. P. 30(a),[4] that authority does not confer upon us the discretion to render advisory opinions on matters that might never arise. *See Utah Transit Auth.*, 2012 UT 75, ¶ 24 n. 14, 289 P.3d 582 (explaining that decisions which give guidance on remand "are not advisory in the sense of dealing with hypothetical or since-extinguished controversies"). The authority to provide guidance on remand is limited to "matters necessary to resolution of the case on remand." *Id.* (citing Utah R.App. P. 30). If, on the other hand, the direction we give may ultimately prove to be irrelevant or future circumstances may obviate our need to consider the constitutionality of a statute, any guidance this court offered on those questions would be an impermissible advisory opinion. *Compare Clegg v. Wasatch County*, 2010 UT 5, ¶¶ 26–27, 227 P.3d 1243 (refusing to consider whether the Motor Vehicle Act violates the uniform oper-

---

4. Rule 30(a) provides, in relevant part, "If a new trial is granted, the court may pass upon and determine all questions of law involved in the case presented upon the appeal and necessary to the final determination of the case." Utah R.App. P. 30(a). In the present case, the district court ruled that Mont & Theda waived the Travel Reduction Act defense, yet reserved a ruling on whether the court would permit it to amend its answers. Under these circumstances, it is uncertain whether interpretation of the Act will be necessary to a final determination of the case.

ation of laws provision of the Utah Constitution because the factual record had not been developed sufficiently to establish that the Act applied), *with Houghton v. Department of Health,* 2005 UT 63, ¶¶ 26–28, 125 P.3d 860 (declining to reach hypothetical issues but reaching the issue of whether the district court properly interpreted a prior holding of the Utah Supreme Court because the scope of the protective order at issue was dependent upon that interpretation and, therefore, the appellate court's ruling would have "a meaningful effect on the parties" (internal quotation marks omitted)). As discussed, it is uncertain at this juncture whether the district court will permit Mont & Theda to amend its answers to add a defense based on the Travel Reduction Act. And if the district court denies such a motion, there is no guarantee that it will do so on the basis that the Act is inapplicable—as opposed to extending its waiver analysis to the resolution of that question. *See Kelly v. Hard Money Funding, Inc.,* 2004 UT App 44, ¶ 26, 87 P.3d 734. Accordingly, this issue is not within the scope of our judicial power. *See Clegg,* 2010 UT 5, ¶ 26, 227 P.3d 1243 ("Indeed, where any direction we may provide ... may ultimately prove to be irrelevant, or where there are possible circumstances under which we would not need to address [a constitutional claim], to do so would be to impermissibly render an advisory opinion." (omission in original) (citations and internal quotation marks omitted)). We therefore do not address the merits of the parties' arguments about the Travel Reduction Act.

## CONCLUSION

¶ 22 We affirm the district court's order striking Mont & Theda's motion for summary judgment because Mont & Theda has not challenged it on appeal. We decline to consider the applicability of the Travel Reduction Act or its constitutionality because these issues are not ripe.